Roger Scott NORTON, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

No. 92–CA–2658–MR.

Court of Appeals of Kentucky.

July 15, 1994.

Rehearing Denied Oct. 28, 1994.

Discretionary Review Denied By Supreme Court Feb. 8, 1995.

Mark A. Posnansky, Appellate Public Advocate, Louisville, for appellant.

Chris Gorman, Atty. Gen., Lana Grandon, Asst. Atty. Gen., Criminal Appellate Div., Frankfort, for appellee.

Before JOHNSTONE, McDONALD and WILHOIT, JJ.

*OPINION*

McDONALD, Judge.

Appellant, Roger Scott Norton, appeals from the judgment of the McCracken Circuit Court convicting him of trafficking in LSD and sentencing him to ten (10) years imprisonment.

Norton presents two arguments on appeal:

*ARGUMENT I*

THE TRIAL COURT COMMITTED REVERSIBLE ERROR AND VIOLATED APPELLANT'S FEDERAL CONSTITUTIONAL RIGHTS UNDER THE SIXTH AND FOURTEENTH AMENDMENTS AS WELL AS SECTION ELEVEN OF THE KENTUCKY CONSTITUTION BY PERMITTING

THE PROSECUTOR TO PLAY THE TAPE OF THE UNDERCOVER DRUG BUY AND INTRODUCE THE TYPEWRITTEN TRANSCRIPT TO THE JURY.

## ARGUMENT II

THE TRIAL COURT COMMITTED REVERSIBLE ERROR AND VIOLATED DUE PROCESS BY PERMITTING EVIDENCE TO BE INTRODUCED REGARDING A PROPOSED SALE OF MARIJUANA.

The background facts of this case are straightforward. In March 1991, acting on a tip from a confidential informant, the Paducah Police Department organized an undercover drug buy. On March 26, 1991, the informant, one Ricky Fritz, and an undercover officer, Lawrence Acree, went to the appellant's residence. Prior to going there, Fritz was thoroughly searched by the police for verification that he was not in possession of any drugs, then both Fritz and Acree were wired with transmitting devices. The transmitters enabled additional police officers who were located in vehicles near appellant's apartment to monitor and record the conversations that occurred between Acree, Fritz and anyone they came in contact with at the residence.

Based on the events that occurred on March 26, 1991, an indictment against the appellant, Norton, and Janie Street was handed down by the grand jury. Norton was charged with trafficking in a schedule I non-narcotic controlled substance (LSD). Street was charged with complicity to trafficking in a schedule I non-narcotic controlled substance (LSD).

Norton and Street (who, subsequent to the date of the event giving rise to the charge but prior to the trial in this matter, were married) were tried together on June 24–25, 1992.

At trial Officer Acree testified about what happened at the appellant's residence and specifically related from his personal knowledge and observations that: during the course of the meeting with the appellant, Norton, he (Norton) took Fritz upstairs and had a "private" discussion with him; the two then returned back downstairs at which time he observed Norton hand the LSD to Fritz; Fritz then passed the LSD to him (Acree); he (Acree) then paid Norton for the LSD; Norton then counted the drug money in his (Acree's) presence. The tape recording made during the course of this transaction was played for the jury who was provided a typewritten transcript (prepared by the Commonwealth and made available to defense counsel) to follow along while listening to the recording. Acree and the officers who monitored and recorded the conversation testified that the tape and transcript "fairly and accurately" reflected what was said on that evening at Norton's residence and that there had been no alteration, no changes, no deletions nor any additions to the content. The officers further identified the portions of the recorded conversation attributable to the informant (Fritz), Officer Acree, and the two defendants, Norton and Street.

The recordings at issue relate a conversation between the two defendants, Norton and Street, Officer Acree, and informant Fritz. The tapes also contain non-substantive remarks and sounds made by unidentified voices in the background. The conversation revolves around a discussion of a possible sale of marijuana, including the logistics of how such a transaction might occur, such as: the quantity desired; the cost; how the money and goods would be delivered and exchanged. Intermingled in this conversation is some discussion regarding "acid": whether Norton has any; how much it costs; and its quality.

In support of his first argument on appeal, i.e., that the trial court committed reversible error in allowing the tape of the undercover drug buy to be played for the jury and allowing the jury to read the typewritten transcript, Norton's contentions are threefold. First, he asserts a confrontation and hearsay problem with the introduction of the tapes and transcript. Secondly, he argues the tapes should have been determined inadmissible because of poor sound quality. Finally, he contends it was reversible error to introduce the transcript that he alleges was the Commonwealth's own interpretation of an inaudible and unintelligible recording.

Norton contends that the playing of the tapes containing unidentified voices and the voice of Janie Street, with statements made attributable to her, violated his right to confrontation. In essence, argues Norton, Street and the other unidentified people effectively became witnesses for the prosecution and he had no ability to confront these witnesses because Street was on trial together with him and the identity of the others was unknown. Accordingly, this forms the basis of his hearsay and confrontation claim.

As related by Professor Lawson, *The Kentucky Evidence Law Handbook* § 8.05 (3d ed. 1993), Kentucky courts have long adhered to the following principle in defining hearsay:

> The theory of the hearsay rule is that when a human utterance is offered as evidence of the truth asserted in it, the credit of the assertor becomes the basis of our inference, and therefore the assertion can be received only when made upon the stand and subject to the test of cross-examination. . . .
>
> This hearsay rule forbids the use of an assertion made out of court, as testimony of the truth of the matter asserted. . . .

Citing *Davis v. Bennett's Adm'r*, 279 Ky. 799, 807, 132 S.W.2d 334, 338 (1939), and *Barnes v. Commonwealth*, Ky., 794 S.W.2d 165 (1990). Hearsay has been defined in the Kentucky Rules of Evidence as: " 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." KRE 801. Kentucky's rule parrots that contained in the Federal Rules.

Statements made outside the courtroom are divided into categories of hearsay and non-hearsay. If used to prove the truth of the matter asserted, such statements constitute hearsay. If used for some other purpose, the statements are non-hearsay. When such statements are offered into evidence for a non-hearsay purpose, they become evidence which the opposing party may fully scrutinize through cross-examination of the witness offering to prove the making of the statement. This has been the basis for the United States Supreme Court to rule that the admissibility of out-of-court statements for non-hearsay purposes does not in any way violate the confrontation clause. *Lawson, supra* at § 8.00. *See Tennessee v. Street*, 471 U.S. 409, 105 S.Ct. 2078, 85 L.Ed.2d 425 (1985).

We conclude that the tapes at issue do not constitute hearsay; instead, they were evidence of the event itself, introduced for a non-hearsay purpose. The issue here is not whether someone else (for instance, the undercover officer) may testify as to what other persons said during the transaction but, instead, whether the tapes of the actual voices of the persons conversing during the course of the transaction are admissible as competent evidence, arguably the best evidence that the transaction or meeting did, in fact, occur and that the statements were, in fact, made. The playing of the tapes was not for the purpose of proving the truth of the matters being asserted, i.e., that a pound of marijuana cost $2,000 or that someone "took a hit and a half and said he was fried," or that the suppliers did not want to come to Norton's place or that Norton lived there since he was 6 years old or that Norton only had one hit left, etc. . . . The Commonwealth had no interest in proving whether such statements were true but rather that the defendants, Street and Norton, were present, engaged in negotiations, and were involved in the transaction that Officer Acree testified occurred.

Having concluded that the evidence at issue was not hearsay, it follows that there has been no violation of appellant's right to confrontation as embodied in both the United States' and Commonwealth's Constitutions. *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980); *United States v. Inadi*, 475 U.S. 387, 391–95, 106 S.Ct. 1121, 1124–26, 89 L.Ed.2d 390, 396–98 (1986); *White v. Illinois*, 502 U.S. 346, 112 S.Ct. 736, 116 L.Ed.2d 848 (1992).

Norton also cites and relies upon *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), and *Lee v. Illinois*, 476 U.S. 530, 106 S.Ct. 2056, 90 L.Ed.2d 514 (1986), in asserting it was reversible error to play the tapes and introduce the transcript containing statements made by

Street. Norton further cites us to *Cruz v. New York*, 481 U.S. 186, 107 S.Ct. 1714, 95 L.Ed.2d 162 (1987), wherein it was held that "... a non-testifying co-defendant's confession incriminating the defendant is not directly admissible against the defendant." Norton urges us to determine that the introduction of the tapes constituted a classic case of the type error prohibited by the well-recognized constitutional principles set forth in *Bruton* and adhered to by the Kentucky courts. *See Cosby v. Commonwealth*, Ky., 776 S.W.2d 367 (1989); *Butler v. Commonwealth*, Ky., 516 S.W.2d 326 (1974); *Lowe v. Commonwealth*, Ky., 487 S.W.2d 935 (1972). Norton extends the same argument regarding the statements on the tapes made by unknown persons.

Suffice it to say that we are sufficiently acquainted with *Bruton* and its progeny as well as the authority from our own jurisdiction that has been cited and relied upon by Norton in this instance. In our opinion, those decisions have no application here.

The statements made by both Street and the other voices in the background which were recorded during the undercover drug buy do not in any conceivable way constitute "confessions" of non-testifying co-defendants which directly incriminated Norton. The statements were not made by Street and the others during post-arrest investigation, they were not "confessions" and they did not inculpate Norton. They certainly were not tantamount to the type testimony at issue in *Bruton*. Accordingly, we conclude such contention lacks merit necessary for a reversal.

■ Even if we were to accept Norton's claim that the recorded conversation was hearsay because it was introduced to prove the truth of the matters asserted (which we do not), it is our conclusion that the statements would nevertheless have been properly admitted. The recordings, even when seen in the context urged by Norton, constituted exceptions to the hearsay rule with sufficient "indicia of reliability" such that, in our opinion, the mandate of the confrontation clause was satisfied. *See White v. Illinois, supra; Taylor v. Commonwealth*, Ky., 821 S.W.2d 72 (1991); *Harrison v. Common-*

*wealth*, Ky., 858 S.W.2d 172 (1993); and KRE 804(b)(3).

We next address Norton's argument that the trial court erred in failing to exclude the tapes of the undercover drug buy because of alleged poor sound quality. Related to this argument, Norton also contends that introduction of a transcript of the tape grossly violated his rights. In this vein, Norton claims the Commonwealth impermissibly sought to supply "its own interpretation of what was being said by whom" in violation of the authority set forth in *Sanborn v. Commonwealth*, Ky., 754 S.W.2d 534 (1988).

First we note that there has been no contention that the tape recordings at issue were not properly authenticated pursuant to the requirements set forth in *Poteet v. Commonwealth*, Ky., 556 S.W.2d 893 (1977), and *Campbell v. Commonwealth*, Ky., 788 S.W.2d 260 (1990). In fact, the authentication process in this matter arguably satisfied even the more rigorous foundation requirements originally adopted (subsequently relaxed) by our Supreme Court in *Commonwealth v. Brinkley*, Ky., 362 S.W.2d 494 (1962). For a more restrictive application of *Brinkley, see Greer v. Commonwealth*, Ky.App., 748 S.W.2d 674 (1988).

■ In our jurisdiction it is within the discretion of the trial court to determine whether tapes should be excluded due to the quality of the sound. *Sanborn, supra*. We recognize that such discretion is not unbridled and must be exercised within the bounds of reason. Therefore, we have listened to the tapes at issue in order to assess the trial court's decision in this regard. While we agree with appellant that portions of the tapes are difficult to readily hear and understand, due to background noise and static in transmission, they are by no means wholly inaudible nor unintelligible. In our opinion, the inaudible portions are not so substantial as to render the recordings untrustworthy as a whole. *See Sanborn, id.,* and *United States v. Robinson*, 707 F.2d 872 (6th Cir.1983). The tapes were sufficiently comprehensible for admission. They offered competent, reliable evidence to assist the finder of fact in the deliberation of this matter. Accordingly, we conclude there to have

been no abuse of discretion on the part of the trial court in permitting the playing of the tapes.

■ We have also considered Norton's argument that the use of the transcript by the jury constituted reversible error under the authority set forth in *Sanborn*. Unlike *Sanborn*, wherein there were over twenty-five specific instances of alleged error in the Commonwealth's transcribed version of the tape recordings and where it was even demonstrated that the court reporter's transcribed version of the tape as it was played in the courtroom differed from that offered by the Commonwealth, there has been no argument in the present case that the transcript contained specific inaccuracies or errors. The transcript at issue in this instance was prepared with the assistance of the officer who was present when the statements were made and, again unlike *Sanborn*, it does not attempt to provide the prosecutor's or anyone else's version or interpretation of the inaudible or indistinct portions. We have listened closely to the tapes and conclude that, instead of attempting to interpret indistinct or inaudible portions of the recordings, the transcript accurately reflects with precise notations the areas of the tapes that are "inaudible." Furthermore, defense counsel in the present case made absolutely no request to substitute a version different than that offered by the Commonwealth. Finally, unlike the *Sanborn* transcript, the transcript here was not made an exhibit and was not taken to the jury room for use during jury deliberations. Accordingly, it is our considered opinion that given the distinguishing characteristics of the present case from that of *Sanborn*, the use of the transcript in this matter was non-violative of the authority therein espoused. In our opinion, *Sanborn*, being fact specific, does not prohibit the use of transcripts in all instances. Admittedly, we lack strict guidance in this area. We are persuaded, however, that under the particular facts and circumstances presented by this case, the decision to allow the jury to follow along with a transcript while listening to the tapes in order to delineate the voices of the speakers was not erroneous and did not constitute an abuse of discretion. *Cf., United States v. Keck,* 773 F.2d 759 (7th Cir.1985);

*United States v. Watson,* 594 F.2d 1330 (10th Cir.1979); *U.S. v. Wilson,* 578 F.2d 67 (5th Cir.1978).

■ Finally, we conclude there is no merit to Norton's argument that the failure and refusal of the trial court to preclude evidence of a proposed sale of marijuana constituted reversible error.

Norton claims that, even if the tapes of the undercover drug deal were deemed otherwise admissible, they should have been precluded because they contained evidence relating to a proposed sale of marijuana which is evidence of other criminal acts unrelated to the offense for which he was being tried. At least, argues Norton, so much of the contents of the recordings that related to the marijuana deal should have been deleted.

■ It is true that the law generally precludes the admission of evidence of other criminal acts unrelated to the charged offense being tried. *See Holland v. Commonwealth,* Ky., 703 S.W.2d 876 (1986); *Pendleton v. Commonwealth,* Ky., 685 S.W.2d 549 (1985); and *O'Bryan v. Commonwealth,* Ky., 634 S.W.2d 153 (1982). Equally true, however, is the fact that while we start with a general prohibition against the use of evidence of other crimes, wrongs, or acts to prove a disposition to commit particular acts, Kentucky law has long recognized numerous exceptions to this rule. Litigation in this area of the law is abundant and, unfortunately, offers little guidance or framework for resolving the issue of admissibility.

■ KRE 404(b) essentially operates to codify long-standing rules that have been applied by the Kentucky courts. *Lawson, supra* at § 2.25.

As codified the rule provides as follows:

KRE 404(b). *Other crimes, wrongs, or acts.* Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible:

(1) If offered for some other purpose, such as proof of motive, opportunity, intent,

preparation, plan, knowledge, identity, or absence of mistake or accident; or

(2) If so inextricably intertwined with other evidence essential to the case that separation of the two (2) could not be accomplished without serious adverse effect on the offering party.

Lawson relates the following excerpt from *United States v. Masters,* 622 F.2d 83 (4th Cir.1980), as being fully and accurately descriptive of the wide array of "other crimes" evidence admissible under Kentucky law under a theory that it is "interwoven" crime:

> One of the accepted bases for the admissibility of evidence of other crimes arises when such evidence "furnishes part of the context of the crime" or is necessary to a "full presentation" of the case, or is so intimately connected with and explanatory of the crime charged against the defendant and is so much a part of the setting of the case and its "environment" that its proof is appropriate in order "to complete the story of the crime on trial by proving its immediate context or the 'res gestae'" or the "uncharged offense is 'so linked together in point of time and circumstances with the crime charged that one cannot be fully shown without proving the other ...' [and is thus] part of the res gestae of the crime charged."

*Id.* at 86.

*Masters, supra* at 86, goes on to state that: "[W]here evidence is admissible to provide this 'full presentation' of the offense '[t]here is no reason to fragmentize the event under inquiry' by suppressing parts of the 'res gestae'." As further pointed out by Lawson, the case law from which the language utilized in KRE 404(b)(2) is extracted suggests "that the rule is intended to be flexible enough to permit the prosecution to present a complete, unfragmented, unartificial picture of the crime committed by the defendant, including necessary context, background and perspective." *See also, Stanford v. Commonwealth,* Ky., 793 S.W.2d 112 (1990), citing both Lawson and *Smith v. Commonwealth,* Ky., 366 S.W.2d 902 (1962), in which it was stated:

> ... [T]he rule [is] that all evidence which is pertinent to the issue and tends to prove the crime charged against the accused is admissible, although it may also approve

or tend to prove the commission of other crimes by him or to establish collateral facts.

*Id.* at 906.

We conclude that admission of the tapes of the undercover drug deal was proper. The negotiations between the defendant, the informant and the officer regarding the marijuana transaction was, in our opinion, "inextricably intertwined with other evidence essential to the case." Despite the fact that the tapes may have demonstrated collateral uncharged criminal activity, we conclude the jury was entitled to know the setting of the case and was properly allowed to receive evidence regarding the time, place and circumstances of the acts forming the basis of the charge against Norton such that its decision would not have to be made in a vacuum. *See United States v. Roberts,* 548 F.2d 665 (6th Cir.), *cert. denied, Williams v. United States,* 431 U.S. 920, 97 S.Ct. 2188, 53 L.Ed.2d 232 (1977). In this instance, separation of the evidence as contemplated by Norton, if not impossible in the first place, would have seriously and adversely affected the Commonwealth's ability to present the case to the jury.

Accordingly, for all the foregoing reasons, the judgment of the McCracken Circuit Court is affirmed.

All concur.