James BAKER, Appellant

v.

COMMONWEALTH of Kentucky,
Appellee.

No. 2006–CA–000498–MR.

Court of Appeals of Kentucky.

Sept. 14, 2007.

Donald H. Morehead, Department of Public Advocacy, Frankfort, KY, for appellant.

Gregory D. Stumbo, Attorney General of Kentucky, Ken W. Riggs, Assistant Attorney General, Frankfort, KY, for appellee.

Before COMBS, Chief Judge; NICKELL and WINE, Judges.

## OPINION

COMBS, Chief Judge.

James Baker appeals from a jury verdict and judgment of the Breathitt Circuit Court finding him guilty of first-degree trafficking in a controlled substance and sentencing him to five-years' imprisonment. After our review, we affirm.

On April 18, 2004, Detectives Ken Spicer and Craig Burch were working in an area of Breathitt County known as Barwick as part of the "UNITE" drug task force. The detectives approached Baker's wife, who was standing by the side of the road, and asked her if she had anything to sell. She told them to come back in a little while because her husband might have some Percocet. They told her that they would call later.

Later that day, Spicer and Burch met with Imogene Daniel, a "cooperating witness," at Buckhorn Dam. Burch searched Daniel and her car for drugs, weapons, and money and confirmed that she was clean. Daniel subsequently called Baker's wife and was told that she had pills; they arranged to meet at Baker's residence.

Burch and Daniel left the dam in Daniel's car. Burch had a tape recorder in his pocket and the money to buy the drugs from the Bakers. Spicer followed them in his car and parked approximately a one-half mile from the Baker residence. Burch and Daniel met the Bakers at their home and then drove them approximately two miles to an isolated, graveled area. Baker's wife got out of the car, and Baker offered to sell Burch two Percocet pills for $25.00. Burch took the pills and gave Baker the money. All of these events were recorded. After the sale, Daniel drove the parties back to the Bakers' house and dropped them off. Burch took the tape recorder from his pocket and ended the recording by summarizing what had just transpired. Burch and Daniel met Spicer at Buckhorn Dam, where Spicer took the drugs and the recording.

On January 21, 2005, some nine months later, the Breathitt County Grand Jury indicted Baker on one count of Trafficking in a Controlled Substance in the First Degree, pursuant to Kentucky Revised Statutes (KRS) 218A.1412, for knowingly and unlawfully selling Percocet, a Schedule II controlled substance. Baker was tried before a jury on January 17, 2006, which found him guilty as charged in the indictment. The jury recommended the minimum sentence of five-years' imprisonment. On February 25, 2006, Baker was formally sentenced in accordance with the jury's recommendations. He now appeals his conviction.

Baker alleges that the trial court erred in allowing tape-recorded statements made by Imogene Daniel to be played to the jury since she was unavailable for cross-examination at trial. During Detective Burch's testimony at trial, the Commonwealth played the tape recording of the drug buy to the jury. On the recording, some time **after** the events of the drug buy itself, Daniel could be heard commenting on Burch's statement that he had purchased drugs with the remarks, "Yes, you did. You gave that to him, and he had his hand out." Later in the recording, while Burch was giving his summary of the

events surrounding the buy, Daniel could again be heard saying, "They've got 'Percocet' wrote right on them," in reference to the pills purchased from Baker.

Baker's counsel objected to allowing the jury to hear Daniel's gratuitous statements because she was unavailable for cross-examination, arguing that the admission of the statements into evidence would violate Baker's rights under the Confrontation Clause of the Sixth Amendment to the United States Constitution. The Commonwealth countered with the argument that the statements were admissible as non-hearsay pursuant to *Norton v. Commonwealth,* 890 S.W.2d 632 (Ky.App. 1994)—even though Daniel was unavailable to testify—because the tape recording was being offered into evidence "to show what happened." The trial court agreed with the Commonwealth and allowed the statements to be played to the jury. The parties now raise the same arguments.

The Confrontation Clause of the Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him[.]" U.S. Const. Amend. VI. This constitutional guarantee is applicable to the states through the Fourteenth Amendment to the U.S. Constitution. *Pointer v. Texas,* 380 U.S. 400, 406, 85 S.Ct. 1065, 1069, 13 L.Ed.2d 923 (1965). The Commonwealth again contends that *Norton v. Commonwealth* serves to rebut Baker's claim that his rights under the Confrontation Clause were violated because Daniel's statements were played to the jury.

In *Norton,* the Paducah Police Department organized an undercover drug buy during which an undercover officer and his informant purchased LSD from Norton and another defendant. The transaction and the conversations of the parties involved were recorded on tape and were played to the jury during trial. We summarized the substance of the recording as follows:

The recordings at issue relate a conversation between the two defendants, Norton and Street, Officer Acree, and informant Fritz. The tapes also contain non-substantive remarks and sounds made by unidentified voices in the background. The conversation revolves around a discussion of a possible sale of marijuana, including the logistics of how such a transaction might occur, such as: the quantity desired; the cost; how the money and goods would be delivered and exchanged. Intermingled in this conversation is some discussion regarding "acid": whether Norton has any; how much it costs; and its quality.

*Id.* at 634.

Norton objected to introducing the tape recording at trial, arguing that the statements that it contained were hearsay and that they violated his right to confrontation. In disagreeing, we held that the tapes in issue did not constitute hearsay. *Id.* at 635. We reasoned that the tapes were not offered into evidence for the purpose of proving the truth of the matters being asserted in the recorded conversations; "i.e., that a pound of marijuana cost $2,000 or that someone 'took a hit and a half and said he was fried....'" *Id.* Instead, we found that the Commonwealth "had no interest in proving whether such statements were true but rather that the defendants ... were present, engaged in negotiations, and were involved in the transaction...." *Id.* Consequently, since the tapes did not contain hearsay, a Confrontation Clause violation could not be at issue and thus did not occur. *Id.*

After reviewing the record before us, we tend to agree that the Commonwealth and the trial court properly relied on *Norton* as a basis for admitting Daniel's state-

ments into evidence as essentially non-hearsay. However, we are persuaded that appellant has raised some legitimate hearsay arguments suggesting that the statements present a hybrid issue as to their quasi-hearsay/non-hearsay nature. We note that while the contested statements in *Norton* occurred simultaneously with the drug buy, those at issue here were recorded **after** the transaction had taken place. Additionally, Daniel's comments presented her version of what she had witnessed and bolstered Detective Burch's account of events. Thus, the reliability of such statements is potentially questionable and merits more analysis than automatic reliance on *Norton*.

The statements fit within none of the enumerated hearsay exceptions set forth in Kentucky Rules of Evidence (KRE) 803 (under which the availability of the declarant is immaterial). For example, the statements do not reflect a present sense impression under KRE 803(1) because they did not describe events as they were happening but instead alluded to events that had already occurred. *Fields v. Commonwealth*, 12 S.W.3d 275, 279–80 (Ky.2000). They also were not admissible as public records and reports under KRE 803(8)(A), *id.* at 280, or as part of any records of regularly conducted activity under KRE 803(6) since nothing was introduced to suggest that the statements qualified for admission under a separate hearsay exception. *See Manning v. Commonwealth*, 23 S.W.3d 610, 613–14 (Ky. 2000). The statements also do not fit within any of the hearsay exceptions set forth in KRE 804.

■ In light of these hearsay arguments, we shall re-visit their ramifications as to Baker's constitutional rights under the Confrontation Clause. In *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), the United States Supreme Court re-examined its prior case law dealing with the Confrontation Clause and held that the Clause forbids the admission into evidence of all "testimonial" hearsay statements of a witness against a criminal defendant unless the witness is unavailable to testify at trial and the defendant has had a prior opportunity for cross-examination. *Id.*, 541 U.S. at 68, 124 S.Ct. at 1374; *see also Bray v. Commonwealth*, 177 S.W.3d 741, 744 (Ky.2005). In *Davis v. Washington*, 547 U.S. ——, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006), the Court refined *Crawford* and held that the Confrontation Clause applies **only** to testimonial statements and has no bearing on non-testimonial hearsay:

> A critical portion of [*Crawford* ], and the portion central to resolution of the two cases now before us, is the phrase "testimonial statements." Only statements of this sort cause the declarant to be a "witness" within the meaning of the Confrontation Clause. *See id.*, at 51, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177. **It is the testimonial character of the statement that separates it from other hearsay that, while subject to traditional limitations upon hearsay evidence, is not subject to the Confrontation Clause.**

*Id.*, 126 S.Ct. at 2273 (Emphasis added); *see also Whorton v. Bockting*, —— U.S. ——, 127 S.Ct. 1173, 1183, 167 L.Ed.2d 1 (2007).

■ In the case before us, Daniel did not testify at trial, and the Commonwealth's efforts to procure her testimony were unsuccessful; however, the record reflects that Baker did not have a prior opportunity to cross-examine her—as contemplated by *Crawford*. Accordingly, the sole question that we must consider as to Baker's claim for relief under the Confrontation Clause is whether Daniel's state-

ments were testimonial in nature. *Bray,* 177 S.W.3d at 744.

In *Crawford,* the U.S. Supreme Court set forth the Confrontation Clause's emphasis on "testimonial hearsay," noting that "[i]t applies to 'witnesses' against the accused—in other words, those who 'bear testimony.'" *Crawford,* 541 U.S. at 51, 124 S.Ct. at 1364 (Quotation omitted). The Court defined *testimony* as "typically '[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact.'" *Id.* (Quotation omitted). The Court added: "An accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not." *Id.* Our Supreme Court acknowledged and adopted this reasoning in *Commonwealth v. Walther,* 189 S.W.3d 570 (Ky.2006).

The statements made by Daniel certainly qualify as a "declaration or affirmation" tending by their nature to "establish[ ] or prov[e] some fact"; *i.e.,* what had occurred during the drug buy. Her statements directly implicated Baker in the crime for which he was charged and reflected what she had observed as a witness to the transaction. The fact that Daniel's statements were an after-the-fact account of criminal conduct raises concerns. In *Davis,* the U.S. Supreme Court distinguished the disputed interrogation (which occurred during a 911 call) from the exchange in *Crawford* by noting that the witness in *Davis* "was speaking about events *as they were actually happening,* rather than 'describ[ing] past events....'" The present-tense nature of the recitation bolstered the non-testimonial nature of the statement. *Davis,* 126 S.Ct. at 2276 (Quotation omitted) (Emphasis in original).

Daniel's statements in this case are clearly a description of past events—albeit very recently past. They were not made in the context of an ongoing emergency, and they were not made during the actual course of the drug buy as it was occurring. The statements undoubtedly implicated Baker as being involved in criminal activity. These facts, taken together, suggest that the statements were testimonial in nature. *See Heard v. Commonwealth,* 217 S.W.3d 240, 244 (Ky.2007).

■ The fact that the statements were not made in response to questioning does not necessarily render them non-testimonial. *Davis,* 126 S.Ct. at 2274 n. 1. Ultimately, "it is in the final analysis the declarant's statements, not the interrogator's questions, that the Confrontation Clause requires us to evaluate." *Id. Crawford* also endorsed the view that statements were testimonial if they "were made under circumstances which would lead an objective witness reasonably to believe that the statement[s] would be available for use at a later trial[.]" *Crawford,* 541 U.S. at 52, 124 S.Ct. at 1364. Daniel's statements were made while Detective Burch was recording a summary of the events that had occurred at the drug buy. We believe that any objective witness would reasonably believe that this recording would be available for use at a later trial.

We must next determine whether Daniel's statements were made under circumstances that would render them sufficiently solemn and formal to qualify as testimonial for purposes of the Confrontation Clause. The Court's emphasis on solemnity and formality with respect to testimonial hearsay is readily apparent throughout *Crawford*—as demonstrated by the Court's definition of *testimony* provided above (*i.e.,* "[a] solemn declaration or affirmation" of one who "bear[s] testimony"). *Id.,* 541 U.S. at 51, 124 S.Ct. at 1364. *Davis* reiterates that emphasis: "We do not dispute that formality is indeed essential to testimonial utter-

ance." *Davis*, 126 S.Ct. at 2278 n. 5; *see also People v. Coleman*, 16 A.D.3d 254, 791 N.Y.S.2d 112, 113 (N.Y.App.Div.2005).

While the Court failed to define or to set any general guidelines for determining formality, it did note in *Davis* that "[t]he solemnity of even an oral declaration of relevant past fact to an investigating officer is well enough established by the severe consequences that can attend a deliberate falsehood." *Davis*, 126 S.Ct. at 2276. The Court later added: "It imports sufficient formality, in our view, that lies to such officers are criminal offenses." *Id.* at 2278 n. 5.

After careful consideration, we conclude that Daniel's statements to Detective Burch were not sufficiently formal to implicate the Confrontation Clause. Daniel's comments were unprompted, unsolicited, and spontaneous and were not the result of any prompting from Burch. We also note that the situation surrounding Daniel's statements was somewhat unique in that she was doing nothing more than verifying a version of events **that Detective Burch had personally witnessed.** Because of his own direct involvement, Burch had full knowledge of what had occurred. He was not conducting a formal post-incident investigation that required reliance on any information that Daniel provided him. He himself had been a participant, and Daniel was not telling him anything that he did not already know. Daniel's statements were not made under formal conditions that would give a witness time for reflection. We conclude that Daniel's recorded comments were not sufficiently formal to fall within the realm of testimonial hearsay. Therefore, the Confrontation Clause was not implicated.

■ While it is undoubtedly unfortunate that these statements were allowed to be heard by the jury, we are persuaded that any error was harmless. Kentucky Rules of Criminal Procedure (RCr) 9.24 provides that:

No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order, or in anything done or omitted by the court or by any of the parties, is ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order unless it appears to the court that the denial of such relief would be inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding that does not affect the substantial rights of the parties.

As the Kentucky Supreme Court has recently noted, "An error is harmless where, considering the entire case, the substantial rights of the defendant are not affected or there appears to be no likely possibility that the result would have been different had the error not occurred." *Greene v. Commonwealth*, 197 S.W.3d 76, 84 (Ky. 2006). After reviewing the record before us, we cannot say that there is a likely possibility that the result of the trial would have been different even if Daniel's statements had not been introduced to the jury. Detective Burch gave specific and elaborate eyewitness testimony detailing how Baker personally sold him Percocets for cash in a hand-to-hand exchange. Baker provided nothing to refute this version of events. Under these circumstances, Daniel's questionable statements could not be deemed to constitute reversible error.

■ Baker last claims that the trial court erred in denying his motion for a directed verdict following the Commonwealth's case-in-chief. He contends that without additional substantiation of Detective Burch's testimony at trial, there was insufficient evidence for a reasonable jury

to find him guilty beyond a reasonable doubt. We disagree.

Our review of the denial of a motion for directed verdict is governed by the standard set forth in *Commonwealth v. Benham,* 816 S.W.2d 186 (Ky.1991):

> On motion for directed verdict, the trial court must draw all fair and reasonable inferences from the evidence in favor of the Commonwealth. If the evidence is sufficient to induce a reasonable juror to believe beyond a reasonable doubt that the defendant is guilty, a directed verdict should not be given. For the purpose of ruling on the motion, the trial court must assume that the evidence for the Commonwealth is true, but reserving to the jury questions as to the credibility and weight to be given to such testimony.

> On appellate review, the test of a directed verdict is, if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt, only then the defendant is entitled to a directed verdict of acquittal.

*Id.* at 187. After reviewing the entirety of the evidence here, we cannot say that it was clearly unreasonable for the jury to find Baker guilty of trafficking in a controlled substance. Detective Burch gave specific, elaborate, and uncontroverted eyewitness testimony detailing his interaction with Baker and the events surrounding the drug buy. A Kentucky State Police crime lab technician verified that the pills purchased from Baker were Percocets that contained oxycodone. This evidence was more than sufficient to support a conviction.

The judgment of the Breathitt Circuit Court is affirmed.

ALL CONCUR.