# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

RENDERED: DECEMBER 18, 2014
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

## 2013-SC-000788-MR

DANIEL C. STOVALL                            APPELLANT

                 ON APPEAL FROM BOYLE CIRCUIT COURT
V.                  HONORABLE DARREN PECKLER, JUDGE
                       NO. 13-CR-00071

COMMONWEALTH OF KENTUCKY                  APPELLEE

## MEMORANDUM OPINION OF THE COURT

## AFFIRMING

A Boyle Circuit Court jury found Appellant, Daniel C. Stovall, guilty of four counts of first-degree criminal mischief, three counts of third-degree burglary, and two counts of theft by unlawful taking. As a result, he was sentenced to twenty years' imprisonment. He now appeals as a matter of right, Ky. Const. § 110(2)(b), asserting that the trial court erred by (1) denying his pre-trial motion to suppress evidence seized from his unlawful arrest, (2) permitting Sheriff Curt Folger to testify as to hearsay statements made by another law enforcement officer during the investigation, and (3) permitting Officer Chris Stratton to testify about the contents of a surveillance video that was not produced in discovery and was unavailable by the time of trial. For the following reasons, we affirm.

# I. BACKGROUND

Parksville Country Store, Hardee's BP, and Old Bridge Golf Club in Boyle County were burglarized all on the same night. Burglaries also continued into neighboring Lincoln County that night. Based on the surveillance video footage obtained from Parksville Country Store, police suspected that one black male and two white males were responsible for the burglaries. It also led police to believe that the men were driving a dark colored sport utility vehicle ("SUV"). As a result, Sergeant Sim Thacker of the Lincoln County Sheriff's Department attempted to pull over a black SUV, but the driver sped up and evaded Sergeant Thacker. Subsequently, police found the SUV abandoned, containing various stolen items from the burglarized stores. Police also found a wallet in the SUV, which contained a photograph of a young boy.

Approximately twelve hours later and one and one half miles from the abandoned SUV, Appellant, a black male, was going from business to business attempting to obtain a ride from someone. Appellant eventually entered a green taxi, which drove approximately one mile before stopping to pick up a white male passenger, Joshua Johnson. Believing that these men matched the description of the burglars, Lincoln County Sheriff Curt Folger and Lancaster Police pulled the taxi over and arrested both passengers.

During the stop, Sheriff Folger noticed that the passengers were dressed the same as the burglars on the surveillance video. Sheriff Folger also discovered a photograph in Johnson's wallet which was identical to that found in the abandoned SUV. After taking Appellant and Johnson to the police

2

station, law enforcement officers learned that the SUV, Johnson, and Appellant were all from Indiana. Police fingerprinted both suspects and, pursuant to a warrant, obtained DNA samples from Appellant and Johnson. Appellant's fingerprints and DNA matched those on a black plastic bag and gloves found in the SUV.

Appellant filed a motion to suppress evidence discovered by police after his arrest on the grounds that the police illegally stopped the green taxi and arrested Appellant. The trial court denied his motion, and the case proceeded to jury trial. At trial and over Appellant's objection, Sheriff Folger testified that Special Deputy Hal Akers told him about Appellant going from business to business and entering the green taxi. Folger further testified the information provided by Akers led him to stop the taxi. Appellant also objected when Officer Chris Stratton testified about what he had seen on the Parksville Country Store's surveillance video because the video was not produced in discovery or played for the jury at trial. This objection was also overruled, and Appellant was convicted by a jury of the aforementioned charges and sentenced to twenty years' imprisonment. This appeal followed.

## II. ANALYSIS

### A. The Trial Court Did Not Err by Denying Appellant's Suppression Motion

Appellant asserts that the trial court improperly denied his motion to suppress evidence seized after his arrest. He contends that police lacked the requisite probable cause to arrest him, and therefore, evidence seized following the arrest was the inadmissible fruit of an unlawful arrest. An appellate

3

court's standard of review when addressing a suppression motion regarding an alleged illegal search or seizure is two-fold:

> First, historical facts should be reviewed for clear error, and the facts are deemed to be conclusive if supported by substantial evidence. Second, determinations of reasonable suspicion and probable cause are mixed questions of law and fact and are, therefore, subject to *de novo* review. In addition, we are bound to give "due weight to inferences drawn from those facts by resident judges and local law enforcement officers."

*Bauder v. Commonwealth,* 299 S.W.3d 588, 591 (Ky. 2009) (quoting *Ornelas v. United States,* 517 U.S. 690, 699 (1996)) (internal citations omitted); *see also* RCr 9.78.

The trial court found from Sheriff Folger and Deputy Thacker's testimony that police had discovered the abandoned SUV, which contained items that had been stolen from the burglaries earlier that night; that the police were looking for one black male and two white males in connection with the burglaries; and that, within a relatively short time period and distance from the abandoned SUV, Appellant had been knocking on doors looking for a ride before entering a taxi, which picked up a white male passenger a short distance away. This Court has consistently held that a law enforcement officer's testimony alone is enough to constitute "substantial evidence." *See e.g., Payton v. Commonwealth,* 327 S.W.3d 468, 471-72 (Ky. 2010); *Chavies v. Commonwealth,* 354 S.W.3d 103, 108 (Ky. 2011); *Williams v. Commonwealth,* 364 S.W.3d 65, 68 (Ky. 2011). As such, there was substantial evidence to support the trial judge's findings of fact, and they are conclusive. There was no clear error by the trial court in regard to its factual findings.

4

Thus, the question we must now address is whether the trial court appropriately applied its findings of fact to the law when it held that there was probable cause for Appellant's arrest. To do so, we must determine whether it was proper for police to stop the taxi. The Fourth Amendment of the United States Constitution and Section 10 of the Kentucky Constitution protect an individual from unreasonable searches and seizures. Therefore, to conduct an investigatory stop, a police officer must have "a reasonable articulable suspicion" that criminal activity is afoot or that a person the officer encounters is wanted in connection with a completed felony. *Bauder*, 299 S.W 3d at 588 (quoting *Terry v. Ohio*, 392 U.S. 1, 30 (1968)); *United States v. Hensley*, 469 U.S. 221, 229 (1985). This Court has explained:

> A reasonable suspicion is more than an unparticularized suspicion or hunch. Reasonable suspicion, while requiring less of a showing than probable cause, requires at least a minimal level of objective justification for making the stop. Accordingly, the stop of an automobile and the resulting detention of the driver are unreasonable, under the Fourth Amendment, absent a reasonable, articulable suspicion that . . . an occupant is otherwise subject to seizure for violation of the law. The court must consider the totality of the circumstances in determining whether a police officer had a particularized and objective basis for suspecting that a person stopped may be involved in criminal activity.

*Bauder*, 299 S.W 3d at 591 (citing *Terry*, 392 U.S. at 27; *United States v. Sokolow*, 490 U.S. 1, 7 (1989); *Delaware v. Prouse*, 440 U.S. 648, 663 (1979); *United States v. Cortez*, 449 U.S. 411, 417-18 (1981)) (internal citations and quotation marks omitted).

Appellant asserts that the police had no reasonable, articulable suspicion to stop the taxi. He argues that the police only stopped the taxi because it

5

contained one black male passenger and one white male passenger, and that the passengers were not doing anything illegal at the time the taxi was stopped. However, Appellant's assertion ignores the totality of the circumstances. While the races of the taxi passengers was one factor that led police to make the investigatory stop, there were many others that also must be considered. *See Hampton v. Commonwealth*, 231 S.W.3d 740, 747 (Ky. 2007) (discussing that innocent behavior combined with other circumstances can amount to reasonable suspicion).

Law enforcement officers were in the midst of their investigation and in active pursuit of the suspects involved in a series of felony burglaries that occurred approximately twelve hours earlier. Video surveillance footage showed two white males and one black male burglarizing the stores. An abandoned SUV that had earlier evaded the police was discovered, and it contained various stolen items. Then, not far from the abandoned SUV, Special Deputy Akers observed a black male, Appellant, on foot looking for a ride before getting in the taxi and soon thereafter picking up a white male passenger. Sheriff Folger testified that in his experience, it was not common for people to be seeking a taxi in that area. He also testified that Special Deputy Akers had been a Special Deputy for several years, and he had proven to be a reliable source for receiving such information.

Based on the observations and information provided by Special Deputy Akers, Sheriff Folger believed there was reasonable suspicion to perform an investigatory stop of the taxi. Sheriff Folger did not pull the taxi over based on

6

a mere "hunch." Rather, the facts taken together indicate "at least a minimal level of objective justification for the stop." *Id.* He had a reasonable, articulable suspicion that the occupants of the vehicle were responsible for the burglaries, and, thus, subject to seizure for violation of the law. Moreover, we must give deference to Sheriff Folger's determination of reasonable suspicion:

> Officers may draw on their own experience and specialized training to make inferences from, and deductions about, the cumulative information available to them that might well elude an untrained person . . . . This Court has made clear that due deference must be given to the reasonableness of inferences made by police officers.

*Id.* at 592 (citing *United States v. Arvizu*, 534 U.S. 266, 274-74 (2002)); *Commonwealth v. Whitmore*, 92 S.W.3d 76, 79 (Ky. 2002)). Therefore, considering the totality of the circumstances, we hold that law enforcement officers had reasonable articulable suspicion to stop the taxi.

Alternatively, Appellant contends that even if the stop of the taxi was lawful, the arrest that followed the stop was not. He agrees that only reasonable suspicion was needed to stop the taxi, but he asserts that probable cause was required for police to make an arrest. We first note that while we believe there was probable cause to justify Appellant's arrest, we also think that this is an exception where police did not need probable cause to justify an extended detention of Appellant:

> The precise limits on investigatory stops to investigate past criminal activity are more difficult to define. The proper . . . test, which is grounded in the standard of reasonableness embodied in the Fourth Amendment, balances the nature and quality of the intrusion on personal security against the importance of the governmental interests alleged to justify the intrusion. When this balancing test is applied to stops to investigate past crimes, we

7

think that probable cause to arrest need not always be required . . . [W]here police have been unable to locate a person suspected of involvement in a past crime, the ability to briefly stop that person, ask questions, or check identification in the absence of probable cause promotes the strong government interest in solving crimes and bringing offenders to justice. Restraining police action until after probable cause is obtained would not only hinder the investigation, but might also enable the suspect to flee in the interim and to remain at large. Particularly in the context of felonies or crimes involving a threat to public safety, it is in the public interest that the crime be solved and the suspect detained as promptly as possible. The law enforcement interests at stake in these circumstances outweigh the individual's interest to be free of a stop and detention that is no more extensive than permissible in the investigation of imminent or ongoing crimes.

*United States v. Hensley*, 469 U.S. 221, 229 (1985).

Even assuming probable cause was required, we hold that it existed. "To determine whether an officer had probable cause to arrest an individual, we examine the events leading up to the arrest, and then decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause." *Maryland v. Pringle*, 540 U.S. 366, 371 (2003) (internal citations omitted); *see also Commonwealth v. Jones*, 217 S.W.3d 190, 196 (Ky. 2006). "Probable cause for arrest involves reasonable grounds for the belief that the suspect has committed, is committing, or is about to commit an offense." *McCloud v. Commonwealth*, 286 S.W.3d 780, 785-86 (Ky. 2009).

After the taxi was stopped, Sheriff Folger was able to identify that Appellant and Johnson were dressed the same as the burglars were in the surveillance video. Specifically, Sheriff Folger noted that Appellant was wearing distinctive black athletic shoes with red and white markings that had

8

been visible in the video. Police also discovered a photograph of a young boy in Johnson's wallet, which was identical to the photograph found in the SUV. Johnson claimed that the photograph was of his nephew.

We hold that the facts, viewed from the perspective of a reasonably objective police officer, established probable cause for Sheriff Folger to believe that Appellant was a participant in the burglaries. Because the stop of the taxi and the subsequent arrest of Appellant were both lawful, no evidence was the fruit of an illegal search or seizure. Thus, we hold that the trial court did not err in denying Appellant's suppression motion.

## B. The Trial Court Did Not Err by Allowing Sheriff Folger to Testify Regarding Special Deputy Akers's Statements

Over Appellant's hearsay objection, the trial court permitted Sheriff Folger to testify that Special Deputy Akers informed him that he had seen Appellant going door-to-door looking for a ride before getting in a green taxi, which shortly thereafter picked up Johnson. Sheriff Folger testified that he used the information provided by Akers to locate the taxi and pull it over to investigate Appellant and Johnson as suspects in the burglaries. Appellant asserts that the trial court committed reversible error when it allowed this testimony. Specifically, Appellant contends that Akers's statements were inadmissible hearsay. He further argues that his right under the Sixth Amendment's Confrontation Clause was violated because he did not have an opportunity to cross-examine Akers. We disagree.

In regard to investigative verbal acts and hearsay testimony, this Court has held:

9

> The rule is that a police officer may testify about information
> furnished to him only where it tends to explain the action that was
> taken by the police officer as a result of this information *and* the
> taking of that action is an issue in the case . . . . Such testimony
> is then admissible not for proving the truth of the matter asserted,
> but to explain why a police officer took certain actions.

*Chestnut v. Commonwealth*, 250 S.W.3d 288, 294 (Ky. 2008) (internal citations omitted). We have further explained that this testimony is limited "to circumstances where the taking of action by the police is an issue in the case and where it tends to explain the action that was taken as a result of the hearsay information." *Id.* at 294. Moreover, "[t]he standard of review for a trial court's evidentiary ruling is abuse of discretion." *Kerr v. Commonwealth*, 400 S.W.3d 250, 261 (Ky. 2013). The test for abuse of discretion is whether the trial court's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles. *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999).

At trial, Appellant argued that he was illegally arrested and that Sheriff Folger did not have a sufficient description of the burglary suspects to arrest Appellant for the crimes. Thus, the actions taken by police were at issue in the case. As such, we hold that the trial court did not abuse its discretion when it permitted Sheriff Folger to testify about the information provided to him by Akers. The at-issue testimony was not offered to prove the truth of what Akers told Sheriff Folger. Rather, it was offered to explain Sheriff Folger's "motive" for stopping the taxi and subsequently arresting Appellant. *See Chestnut*, 250 S.W.3d at 294. The testimony explained why Sheriff Folger thought that the

10

burglary suspects were in the taxi and therefore why he pursued the taxi and pulled it over. Sheriff Folger's testimony concerned only what he did on the day in question, not the truthfulness of Akers's statements. *See id.*

Further, the Confrontation Clause only applies to the right to confront and cross-examine witnesses when their statements are being used to prove the truth of the matter asserted. *Id.* at 295 (citing *Crawford v. Washington,* 541 U.S. 36 (2004); *Norton v. Commonwealth,* 890 S.W.2d 632, 635 (Ky.App.1994)). Since the testimony about Akers's statements was admitted only to explain Sheriff Folger's actions, Appellant was not denied his right to confrontation. Thus, the trial court did not err in admitting Sheriff Folger's testimony.

## C. The Trial Court Did Not Err by Permitting Officer Stratton to Testify to the Contents of a Lost Surveillance Video

Finally, Appellant contends that the trial court committed reversible error when it permitted Officer Chris Stratton to testify about surveillance video from the Parksville Country Store. We review the trial court's evidentiary ruling for an abuse of discretion. *Kerr v. Commonwealth,* 400 S.W.3d 250, 261 (Ky. 2013).

Officer Stratton testified that he personally saw the video and that it showed three males in hooded sweatshirts breaking into the store and ransacking it. However, the video was never produced to Appellant, and it was not played for the jury at trial. Appellant asserts that the Commonwealth's failure to present the original video recording violates the best evidence rule, KRE 1002, and the Confrontation Clause of the Sixth Amendment.

11

The Commonwealth counters that the surveillance recording was lost or destroyed by the store owner, Jerry Sinkhorn, before the Commonwealth was able to obtain it. Sinkhorn testified at trial that he was a new owner of the store at the time of the burglary and that he was unfamiliar with the operation of the surveillance recording system. Sinkhorn explained that he inadvertently taped over or erased the pertinent video recording. As such, the Commonwealth argues that that Officer Stratton's testimony about the video was admissible pursuant to KRE 1004(1) because the original was lost or destroyed. We agree with the Commonwealth.

KRE 1002 provides, "[t]o prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required, *except as otherwise provided in these rules . . . .*" (Emphasis added.) "Essentially, this rule requires a party to introduce the most authentic evidence which is within their power to present." *Savage v. Three Rivers Med. Ctr.,* 390 S.W.3d 104, 114 (Ky. 2012). KRE 1004 states that "[t]he original is not required, and other evidence of the contents of a writing, recording, or photograph is admissible if: (1) Originals lost or destroyed. All originals are lost or have been destroyed, unless the proponent lost or destroyed them in bad faith . . . ." "Other evidence" as prescribed in KRE 1004 includes any type of secondary evidence, such as oral testimony, and is not limited to just duplicates of the original. *See* Robert G. Lawson, *The Kentucky Evidence Law Handbook*, § 7.20[5] (5th ed. Lexis 2013) (citing Evidence Rules Study Committee, Kentucky Rules of Evidence, p. 111 (Nov. 1989)) ("A satisfactory explanation for nonproduction of

12

the original eliminates the impact of Rule 1002 . . . and leaves the offering party free to produce whatever secondary evidence he thinks will be most helpful to his case.").

The burden of proving that an original was lost or destroyed rests with the offering party. That party is also required to call the last known custodian, if available, to testify to the loss or destruction of the original. *Taulbee v. Drake*, 198 S.W.2d 50 (Ky. 1946); *see also* Robert G. Lawson, *The Kentucky Evidence Law Handbook*, § 7.25[2][b] (5th ed. Lexis 2013). After hearing the offering party's explanation for the loss or destruction of the original, it is within the trial court's discretion to determine whether the loss was in bad faith. *See* Robert G. Lawson, *The Kentucky Evidence Law Handbook*, § 7.25[2][b] (5th ed. Lexis 2013) (citing Evidence Rules Study Committee, Kentucky Rules of Evidence, p. 111 (Nov. 1989)).

In the present case, the Commonwealth satisfied its obligations by calling the store owner to testify that he inadvertently lost or recorded over the surveillance footage. Officer Stratton also testified that he watched the video before it was erased. Appellant did not offer any evidence suggesting that the video was lost or destroyed in bad faith. Thus, we hold that it was within the trial court's discretion to determine that Officer Stratton's testimony was the most authentic evidence of the video that the Commonwealth was capable of presenting and therefore admit the testimony.[1]

---

[1] Additionally, the trial court permitted Appellant to have a missing evidence instruction, which allowed the jury to infer that the lost video would be favorable to his case if it were available. Even if we accepted Appellant's contention that

As for Appellant's assertions regarding the Confrontation Clause and the lost video, as discussed above, the Confrontation Clause only applies to hearsay matters, which are out of court statements offered to prove the truth of the matter asserted. KRE 801(c). A statement is defined in part as "nonverbal conduct of a person, if it is intended by the person as an assertion." KRE 801(a). The burglars' actions on the surveillance video were not intended to be assertions. Therefore, the video was not hearsay. *Harwell v. Commonwealth*, WL 1103112, at *9 (Ky. 2011). In addition, Appellant had the opportunity at trial to cross-examine Officer Stratton about his recollection and account of the video. As such, we hold that there was no Confrontation Clause violation and the trial court did not abuse its discretion when it permitted Officer Stratton to testify to what he observed on the video.

## III. CONCLUSION

For the aforementioned reasons, we affirm Appellant's convictions and sentence.

All sitting. All concur.

---

permitting testimony on the video constituted an abuse of discretion by the trial court, we believe the error would be harmless. RCr 9.24. An evidentiary error may be deemed harmless if the reviewing court can say with fair assurance that the judgment was not substantially swayed by the error. *Winstead v. Commonwealth*, 283 S.W.3d 678, 688-89 (Ky. 2009). Given the extensive amount of other evidence provided in the case, including another surveillance video that was played for the jury and DNA evidence that linked Appellant to items stolen from the burglarized stores, we can say with fair assurance that the jury was not substantially swayed by Officer Stratton's testimony.

14

COUNSEL FOR APPELLANT:

Jason Apollo Hart, Assistant Public Advocate

COUNSEL FOR APPELLEE:

Jack Conway, Attorney General of Kentucky

David Bryan Abner, Assistant Attorney General