Bass WEBB, Appellant

v.

COMMONWEALTH of Kentucky,
Appellee.

No. 2011–SC–000594–MR.

Supreme Court of Kentucky.

Nov. 21, 2012.

Brandon Neil Jewell, Assistant Public Advocate, Department of Public Advocacy, Frankfort, KY, for Appellant.

Jack Conway, Attorney General of Kentucky, Heather Michelle Fryman, Assistant Attorney General, Office of Criminal Appeals, Office of the Attorney General, Frankfort, KY, for Appellee.

Opinion of the Court by Justice SCOTT.

A Bourbon Circuit Court jury found Appellant, Bass Webb, guilty of two counts of attempted murder and one count of being a first-degree persistent felony offender (PFO). For these crimes, Appellant received a fifty-year prison sentence. He now appeals as a matter of right, Ky. Const. § 110(2)(b), alleging that (1) evidence that he was a former inmate was erroneously admitted, (2) evidence that he threatened a prison guard during apprehension was erroneously admitted, (3) the prosecution exceeded the scope of KRS 532.055 when telling jurors about prior convictions, and (4) he was entitled to a directed verdict on the PFO charge. For the reasons that follow, we affirm in part and vacate and remand in part.

## I. BACKGROUND

Around 8:00 a.m. on July 31, 2009, Appellant drove his car through the parking lot of the Bourbon County Detention Center and into a wall against which Deputy Jailer Ryan Barkley and Pretrial Officer Josh Mason were standing. Mason saw the car coming and moved out of the way. However, Barkley did not see the car and the front bumper of the vehicle trapped him against the wall. The tires continued to spin while Barkley was trapped between the car and wall. Mason attempted to open the car's door and gain control of the vehicle, but before he could do so Appellant put the car in reverse and sped away. While trapped against the wall, Barkley recognized Appellant because he had once been an inmate at the jail.

John Hanson, another deputy jailer, witnessed the incident from inside his own vehicle. He saw Appellant's car come into the jail parking lot, accelerate, and hit Barkley. Hanson got out of his vehicle, ran to Appellant's car, and tried to pull Appellant out. However, as he did so, Appellant backed away and drove off. Hanson re-entered his vehicle and followed Appellant. During this pursuit, Appellant's car appeared to catch fire and began to fill with smoke. When Appellant's car stopped several minutes later, Hanson approached, pulled Appellant out, and handcuffed him. Appellant had a beer in his hand and kept repeating "why don't you just kill me." Appellant then threatened to kill Hanson. Hanson detained Appellant, and he was later arrested.

A Bourbon County Grand Jury indicted Appellant on two counts of attempted murder and one count of first-degree PFO. Prior to trial, defense counsel moved to exclude statements regarding the witnesses' prior experiences with Appellant at the jail. In the motion, defense counsel specifically requested that the court exclude any and all evidence of statements conveying Appellant's reputation as a "violent inmate." The trial court ruled that any evidence which would identify Appel-

lant as a "violent inmate" would be excluded.

The issue presented itself again just prior to trial, and the trial court ruled that evidence that the witnesses recognized Appellant as being a former jail inmate could be presented to the jury for identification purposes only. Furthermore, the trial court noted it would provide the jury with a limiting instruction explaining how it was to use the evidence.

Appellant was brought to trial on May 16, 2011. That morning, the defense moved to exclude evidence that Appellant had threatened to kill Deputy Jailer Hanson upon apprehension. The trial court ruled, however, that the threat was part of the act and was therefore admissible.

The jury ultimately found Appellant guilty of all charges, and the trial court adopted the jury's recommended sentence of fifty years in prison. This appeal followed.

## II. ANALYSIS

Appellant sets forth four separate arguments: two alleging evidentiary error, one alleging that the Commonwealth exceeded the scope of KRS 532.055 during the penalty phase, and one alleging that he was entitled to a directed verdict. We will discuss them in that order.

### A. Evidence Appellant Was a Former Inmate

 Appellant argues that evidence he was a former inmate should have been excluded at trial. Specifically, he alleges that this evidence was irrelevant under KRE 401, and unduly prejudicial to the jury's decision regarding what level of offense he committed under KRE 403, as he was willing to stipulate as to his identity.[1,2] We review a trial court's evidentiary ruling for abuse of discretion. *Anderson v. Commonwealth,* 231 S.W.3d 117, 119 (Ky.2007) (*citing Woodard v. Commonwealth,* 147 S.W.3d 63 (Ky.2004)). "The test for an abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Id.* (*citing Goodyear Tire & Rubber Co. v. Thompson,* 11 S.W.3d 575, 581 (Ky.2000)).

During the pretrial hearing on April 29, 2011, defense counsel argued that witness statements regarding prior experiences with Appellant should be excluded. In this motion, defense counsel requested that the court exclude any and all statements by any potential witnesses that suggested the intentionality or wantonness of Appellant's acts. Specifically, the defense sought the exclusion of a statement by Detective James Primm which suggested that Appellant was a known "violent inmate" and therefore this incident was no accident. The trial court ruled that no witnesses could call Appellant "violent," but that the Commonwealth had the right to present testimony to explain what had occurred. At that point, however, there was no discussion regarding the exclusion

---

1. As previously discussed, the trial court allowed this information to be presented to the jury to establish how Barkley and Mason were able to identify Appellant at the scene of the crime. The trial court also admonished the jury to use this evidence for identity purposes only, and not as evidence of guilt.

2. Additionally, Appellant makes a brief reference that this was inadmissible evidence of a "prior bad act," under KRE 404, but fails to fully develop this argument. This issue was addressed by defense counsel during a bench conference immediately preceding the start of trial. However, there is a question as to whether or not an argument based on KRE 404 was properly preserved. We hold it was not. Because Appellant does not ask this Court to review for palpable error, we decline to do so.

of testimony that would generally identify Appellant as a former inmate.[3]

On May 16, 2011, the day of trial, a bench conference was held at which the defense sought to exclude the testimony of Barkley and Mason which would identify Appellant as a former inmate of the Bourbon County Detention Center. Defense counsel argued that he thought the court had already ruled for the defense on that motion, and that it would be unduly prejudicial to tell the jury that his client had previously been an inmate. Furthermore, the defense argued that they were willing to stipulate to Appellant's identity. The trial court said that it had only excluded evidence of Appellant's history as a "violent inmate" and was inclined to allow the evidence because "it goes to his identity and to both parties knowing each other." The trial court ruled that the Commonwealth could introduce the evidence for identity purposes only, and that it would also provide a limiting instruction as to the purpose for which the testimony could be used. At trial, the court provided an admonition to the jury stating that any testimony regarding Appellant being a prior inmate was not to be used in determining guilt in this case. The trial court repeated its admonition after the testimony was presented.

### 1. KRE 401

■ Appellant argues that the testimony provided by Barkley and Mason should have been excluded, as the fact that he had been a former inmate of the Bourbon County Detention Center lacked relevance as required by KRE 401. According to KRE 401, " '[r]elevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." "[R]elevance is established by any showing of probativeness, however slight." *Springer v. Commonwealth*, 998 S.W.2d 439, 449 (Ky.1999).

■ In this case, the Commonwealth offered the evidence to establish Appellant's identity; the basis for their recognition happened to be from his previous incarceration in the facility at which the witnesses worked. Given that identifying the perpetrator is an important element of any crime, laying a basis for how Appellant's identity was determined is relevant evidence. We recognize that trial courts are in a better position to make relevancy decisions and for that reason give them substantial deference. *See* Robert G. Lawson, *The Kentucky Evidence Law Handbook*, 2.05 at 83 (4th ed.2003). Thus, we will not disturb the decisions of the trial court without a clear showing of abuse of discretion. *Partin v. Commonwealth*, 918 S.W.2d 219 (Ky.1996). In this case, there is no indication that the trial court abused its discretion in allowing such testimony.

### 2. KRE 403

■ Appellant also argues that this evidence should have been excluded under KRE 403, which states that relevant evidence may be excluded on the grounds of "prejudice, confusion, or waste of time." In this case, Appellant argues that the probative value of the evidence is substantially outweighed by the prejudice he would suffer as a result of the jury knowing that he had been previously incarcerat-

---

**3.** It appears from defense counsel's arguments that he was under the impression that this issue was raised in the hearing regarding their motion in limine; however the only issue that was discussed therein was the ex-clusion of testimony regarding his characterization as a "violent inmate." The issue of excluding testimony that he had been an inmate at all was not raised until the morning of the trial.

ed. There are three basic inquiries that must be made by the trial court when making a determination under KRE 403:

(i) assessment of the probative worth of the evidence whose exclusion is sought; (ii) assessment of the probable impact of specified undesirable consequences likely to flow from its admission (i.e., "undue prejudice, confusion of the issues, or misleading the jury, . . . undue delay, or needless presentation of cumulative evidence"); and (iii) a determination of whether the product of the second judgment (harmful effects from admission) exceeds the product of the first judgment (probative worth of evidence).

*Partin,* 918 S.W.2d at 222. However, as previously noted, we review for abuse of discretion. *Anderson,* 231 S.W.3d at 119.

■■■ KRE 403, which is derived from its Federal counterpart, does not offer protection against evidence that is merely prejudicial in the sense that it is detrimental to a party's case. *Carter v. Hewitt,* 617 F.2d 961, 972 (3d Cir.1980); *Brazos River Auth. v. GE Ionics, Inc.,* 469 F.3d 416, 427 (5th Cir.2006) (" '[U]nfair prejudice' as used in Rule 403 is not equated with testimony that is merely adverse to the opposing party."). The Commonwealth "is permitted to prove its case by competent evidence of its own choosing, and . . . the defendant may not stipulate away parts of the case that he does not want the jury to see." *Page v. Commonwealth,* 149 S.W.3d 416, 420 (Ky.2004); *see also Pollini v. Commonwealth,* 172 S.W.3d 418, 424 (Ky.2005); *Johnson v. Commonwealth,* 105 S.W.3d 430, 438–39 (Ky.2003); *Barnett v. Commonwealth,* 979 S.W.2d 98, 103 (Ky.1998). Thus, the accepted rule is that the Commonwealth is entitled to prove its case free from a defendant's option to stipulate the evidence.

■■■ Furthermore, there are certain aspects of the case that are so intertwined with the other evidence that they must be admitted in order to paint an accurate picture of the events in question.

One of the accepted bases for the admissibility of evidence of other crimes arises when such evidence "furnishes part of the context of the crime" or is necessary to a "full presentation" of the case, or is so intimately connected with and explanatory of the crime charged against the defendant and is so much a part of the setting of the case and its "environment" that its proof is appropriate in order "to complete the story of the crime on trial by proving its immediate context or the 'res gestae' " or the "uncharged offense is 'so linked together in point of time and circumstances with the crime charged that one cannot be fully shown without proving the other. . . .' [and is thus] part of the res gestae of the crime charged."

*Norton v. Commonwealth,* 890 S.W.2d 632, 638 (Ky.App.1994) (*quoting United States v. Masters,* 622 F.2d 83, 86 (4th Cir.1980)).

■■■ It is for these reasons that where evidence is needed to provide a full presentation of the offense, or to "complete the story of the crime," *id.* at 638, there is no reason to fragment the event by suppressing parts of the *res gestae.* Proper identification of the perpetrator, and laying the proper basis for doing so, is a key piece of the Commonwealth's case-in-chief, and we are unpersuaded that allowing the jury to hear it was unduly prejudicial. Therefore, the trial court did not abuse its discretion by allowing the witnesses to testify as to the reason they were able to identify Appellant.

■■■ We add here that the trial court admonished the jury to use the evidence for identification purposes only. "A jury is presumed to follow an admonition to disregard evidence and [an] admonition

thus cures any error." *Meece v. Commonwealth*, 348 S.W.3d 627, 675 (Ky.2011). (*citing Johnson v. Commonwealth*, 105 S.W.3d 430, 441 (Ky.2003)). This Court will not presume improper jury conduct when a limiting instruction was provided and the defendant failed to present any argument to rebut the presumption that the trial court's admonition cured the error. *Mills v. Commonwealth*, 996 S.W.2d 473, 485 (Ky.1999) (*overruled on other grounds by Padgett v. Commonwealth*, 312 S.W.3d 336, 349 (Ky.2010)).[4]

In sum, the testimony identifying Appellant as a former inmate was not unduly prejudicial, confusing, or a waste of time. Therefore, we hold that the trial court did not abuse its discretion in allowing this evidence to be presented to the jury.

**B. Evidence Appellant Threatened Hanson During Apprehension**

■ Appellant next argues that evidence he threatened Deputy Jailer Hanson when he was apprehended should have been excluded at trial. Specifically, he alleges that this was irrelevant under KRE 401 and unduly prejudicial under KRE 403 to the jury's decision regarding what offense he committed against Barkley and Mason.[5] We review a trial court's evidentiary ruling for abuse of discretion.

*Anderson*, 231 S.W.3d at 119 (*citing Woodard*, 147 S.W.3d 63).[6]

After Appellant drove off from the Bourbon County Detention Center, Hanson got in his own vehicle and followed Appellant. When Appellant's car stopped several minutes later, Hanson got out of his vehicle and apprehended Appellant. Just before the trial started, the Commonwealth informed the court it wanted to introduce evidence that Appellant had threatened to kill Hanson when he was apprehended. Defense counsel objected and the trial court ruled that the evidence could be admitted because it was intertwined with Appellant's fleeing and showed his state of mind.

### 1. KRE 401

Appellant argues that the threats he made to Hanson should have been excluded under KRE 401 as they were not relevant to the crime charged. KRE 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." "Relevancy is established by any showing of probativeness, however slight." *Springer*, 998 S.W.2d at 449.

---

**4.** There are only two circumstances in which the presumptive efficacy of an admonition is overcome: (1) when there is an overwhelming probability that the jury will be unable to follow the court's admonition *and* there is a strong likelihood that the effect of the inadmissible evidence would be devastating to the defendant or (2) when the question was asked without a factual basis *and* was "inflammatory" or "highly prejudicial." *Derossett v. Commonwealth*, 867 S.W.2d 195, 198 (Ky.1993); *Alexander v. Commonwealth*, 862 S.W.2d 856 (Ky.1993). Neither of those scenarios exist here.

**5.** These arguments were properly preserved by defense counsel's objection to the presenta-

tion of the testimony. KRE 103; RCr 9.22. He also contends, for the first time on appeal, that this was evidence of an unrelated bad act that occurred sometime after the incident at the Bourbon County Detention Center, and therefore should have been excluded under KRE 404(b). Because this issue is unpreserved, and because Appellant failed to request palpable error review, we decline to address this argument.

**6.** As previously noted, the test for abuse of discretion "is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Id.* (*citing Goodyear Tire*, 11 S.W.3d at 581).

We have held that "evidence of flight by a defendant from the scene of a crime or from arresting officers ... is admissible to show a sense of consciousness or guilt." *Major v. Commonwealth*, 177 S.W.3d 700, 712 (Ky.2005); *see also Rodriguez v. Commonwealth*, 107 S.W.3d 215, 219–220 (Ky.2003). The fact that Appellant fled the scene of the crime and then became combative upon apprehension and threatened Hanson is part of the incident in question. These events happened just after Appellant drove his car into Officer Barkley, and therefore cannot be considered as two separate events. Thus, the trial court did not abuse its discretion in allowing the evidence to be presented to the jury, as it was a part of the crime committed.

Furthermore, we reiterate that the Kentucky Rules of Evidence are "intended to be flexible enough to permit the prosecution to present a complete, un-fragmented, un-artificial picture of the crime committed by the defendant, including necessary context, background and perspective." *Major*, 177 S.W.3d at 708 (*citing Norton*, 890 S.W.2d at 638). Accordingly, we conclude that the threat to Officer Hanson was made as an ongoing part of the commission of the crime, and that the Commonwealth therefore properly introduced it into evidence.

### 2. KRE 403

Appellant also argues that even if the evidence is relevant under KRE 401, it should have been excluded under KRE 403. KRE 403 calls for the exclusion of relevant evidence "if its probative value is substantially outweighed by the danger of undue prejudice, confusion of the issues, or by considerations of undue delay, or needless presentation of cumulative evidence." Appellant argues that the probative value of his threat to Hanson was substantially outweighed by the prejudice he suffered, and thus they should have been excluded.

As previously noted, KRE 403 "does not offer protections against evidence that is merely prejudicial, in the sense of being detrimental to a party's case." *Carter*, 617 F.2d at 972. Furthermore, evidence is only "unfairly" or "unduly" prejudicial if it:

> "[A]ppeals to the jury's sympathies, arouses its sense of horror, provokes its instinct to punish," or otherwise "may cause a jury to base its decision on something other than the established propositions in the case."

*Id.* (*quoting* 1 J. Weinstein & M. Berger, *Weinstein's Evidence* P 403(03), at 403–15 to 403–17 (1978)).

Given that this threat was made only minutes after Appellant drove his car into the Bourbon County Detention Center and Barkley, and happened while he was fleeing the scene of the crime, it can fairly be considered to be part of the crime itself—or, more accurately, part of the *res gestae*. *Norton*, 890 S.W.2d at 638. Appellant acknowledged that testimony about the flight was admissible, and he did not pose an objection to the flight testimony at trial. Given that the threat was a part of the flight, it is admissible. Crimes often have a set of surrounding circumstances which help shed light on aspects such as motive and intent. As we previously acknowledged, the Commonwealth is entitled to make a full presentation of the case, and that often includes a description of events that lead up to and take place after the commission of the crime itself. *Id.* The exclusion of this testimony would have deprived the Commonwealth of presenting a full case-in-chief.

In addition, "[i]t has long been a rule in this jurisdiction that threats ... of a crime are probative of the defendant's motive and intent to commit the

crime...." *Sherroan v. Commonwealth,* 142 S.W.3d 7, 18 (Ky.2004) (*citing Richie v. Commonwealth,* 242 S.W.2d 1000, 1004 (Ky.1951)): *See also Davis v. Commonwealth,* 147 S.W.3d 709, 722 (Ky.2004) ("[G]enerally, evidence of prior threats and animosity of the defendant ... is admissible as evidence of ... intent...."). Granted, in this situation the threat was not made to the victim of the crime, but under the circumstances of the case, it was nevertheless probative of motive of intent. If *prior* threats are admissible, and not "unduly" or "unfairly" prejudicial, threats made *during* the course of the crime itself are also admissible.

 Furthermore, KRE 403 gives the trial judge substantial discretion to balance probative worth against harmful effects. *Brock v. Commonwealth,* 947 S.W.2d 24, 29 (Ky.1997). The trial court is the most familiar with the facts of the case, and thus in the best position to make the determination of admissibility. Given that the threat made to Officer Hanson occurred during the crime itself (or, more specifically, during his subsequent flight), we cannot say that the trial court abused its discretion in allowing it to be presented to the jury.[7]

### C. KRS 532.055

Appellant's next argument is that the Commonwealth impermissibly exceeded the scope of KRS 532.055 when it told the jury about his prior convictions. Specifically, he alleges the error arose when the Commonwealth read the names of victims and told the jurors details other than the elements of the offenses of which he was convicted. He therefore requests a new penalty phase.

 Appellant concedes that this issue is unpreserved, but asks that it be reviewed for palpable error. RCr 10.26; KRE 103. Under KRE 103(e), we review unpreserved claims of evidentiary error for palpable error. *Ernst v. Commonwealth,* 160 S.W.3d 744, 758 (Ky.2005). "A finding of palpable error must involve prejudice more egregious than that occurring in reversible error, ... and the error must have resulted in 'manifest injustice.'" *Id.* (*citing Brock v. Commonwealth,* 947 S.W.2d 24, 28 (Ky.1997)). "[P]alpable error ... [is] composed of two elements: obviousness and seriousness, the latter of which is present when a failure to notice and correct such an error would seriously affect the fairness, integrity, and public reputation of the judicial proceeding." *Id.* (citations and internal quotation marks omitted).

During the penalty phase, the Commonwealth was allowed to read the indictments of four circuit court cases in which the Appellant had been found guilty. During this presentation, the Commonwealth read the names of eight victims, five of which were law enforcement officers, and told jurors details other than the elements of the charged offense. Appellant argues that given that five of the victims in these other crimes were police officers, permitting this evidence substantially prejudiced him and pointed to his guilt in the case at hand (in which all of the victims were also law enforcement or corrections officers). We agree.

KRS 532.055(2)(a) provides, in relevant part, that in the sentencing stage of felony cases, "[e]vidence may be offered by the

---

7. While we do not believe that the trial court committed error in allowing this evidence to be presented, had it done so, this error would be considered harmless. Given the standard set forth in *Winstead v. Commonwealth,* an error is harmless if the "judgment was not substantially swayed by the error." 283 S.W.3d 678, 689 (Ky.2009)(*citing Kotteakos v. United States,* 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)).

Commonwealth relevant to sentencing including: 1. Minimum parole eligibility, prior convictions of the defendant, both felony and misdemeanor; [and] 2. The nature of prior offenses for which he was convicted...." *See also Newman v. Commonwealth,* 366 S.W.3d 435, 445–46 (Ky.2012); *Mullikan v. Commonwealth,* 341 S.W.3d 99, 107–08 (Ky.2011).

In defining what evidence is permissible in describing the "nature of prior offenses" we recently held that:

> [E]vidence of prior convictions is limited to conveying to the jury the elements of the crimes previously committed. We suggest this be done either by a reading of the instruction of such crime from an acceptable form book or directly from the Kentucky Revised Statute itself. Said recitation for the jury's benefit, we feel, is best left to the judge. The description of the elements of the prior offense may need to be customized to fit the particulars of the crime, i.e., the burglary was of a building as opposed to a dwelling. *The trial court should avoid identifiers, such as naming of victims,* which might trigger memories of jurors who may—especially in rural areas—have prior knowledge about the crimes.

*Mullikan,* 341 S.W.3d at 109 (emphasis added).

■■■■ In light of our pronouncement in *Mullikan,* it is clear that the Commonwealth exceeded the scope of KRS 532.055 and introduced improper evidence during the penalty phase. The Commonwealth went far beyond "conveying to the jury the elements of the crimes previously committed," *id.,* and introduced highly prejudicial information concerning the victims of the prior crimes. We hold this prejudice to be so egregious as to have resulted

in manifest injustice, in that failure to correct the error "would seriously affect the fairness, integrity, and public reputation of the judicial proceeding." *Id.* (citations and internal quotation marks omitted). Accordingly, we vacate Appellant's sentence and remand for a new penalty phase with instructions that "evidence of [Appellant's] prior convictions [be] limited to conveying to the jury the elements of the crimes previously committed." *Mullikan,* 341 S.W.3d at 109.

■■■■ Furthermore, given the frequency with which this issue keeps presenting itself, we take this opportunity to set forth the proper manner in which evidence of prior convictions may be introduced to the jury. As noted above, we held in *Mullikan:*

> [T]hat the evidence of prior convictions is limited to conveying to the jury the elements of the crimes previously committed. We suggest this be done either by a reading of the instruction of such crime from an acceptable form book or directly from the Kentucky Revised Statute itself. Said recitation for the jury's benefit, we feel, is best left to the judge.

341 S.W.3d at 109. Accordingly, the first and preferred method of introducing this evidence is for the judge to recite the elements of the prior crimes to the jury. The concern in allowing the prosecutor to read the judgments into the record is that the roles of advocate and witness become blurred.[8]

■■■■ On the other hand, we discern no constitutional due process violation, without more, with the mere reading by the prosecutor to the jury of the elements of the prior offenses. Therefore, if both parties agree, the Commonwealth, may read

---

**8.** It also contradicts what every trial judge says to the jury, that evidence comes from the witness stand, and what lawyers say is not evidence.

the elements of the crime(s) to the jury. In doing so the role confusion should be explained to the jury so it understands that that the prosecutor is not a witness, but rather an attorney who is reading agreed-upon, stipulated evidence. If, however, the parties do not agree, the Commonwealth is left with two options: (1) the judge may read the elements of the crime(s), or (2) the Commonwealth may call a witness to testify as to the elements of the crime(s) committed as reflected in prior judgments. Handling this presentation of evidence correctly would have avoided the error which requires us to vacate Appellant's sentence and remand this matter to the trial court. By explaining the correct procedure, we hope to prevent such errors in the future.

### D. Directed Verdict

Finally, Appellant argues that the trial court erred when it denied his motion for a directed verdict on the PFO charge. Specifically, he contends that the prosecution failed to introduce actual evidence of his prior criminal record as required by the statute. Therefore, if this Court does not reverse the PFO conviction, he asks that his sentence be vacated and the case remanded for a new sentencing phase.[9]

This Court outlined the standard by which a trial court should evaluate a motion for a directed verdict in *Commonwealth v. Benham*:

[T]he trial court must draw all fair and reasonable inferences from the evidence in favor of the Commonwealth. If the evidence is sufficient to induce a reasonable juror to believe beyond a reasonable doubt that the defendant is guilty, a directed verdict should not be given. For the purpose of ruling on the motion, the trial court must assume that the

evidence for the Commonwealth is true, but reserving to the jury questions as to the credibility and weight to be given to such testimony.

816 S.W.2d 186, 187 (Ky.1991); *see also Smith v. Commonwealth*, 361 S.W.3d 908, 920 (Ky.2012).

For our purposes, "the test of a directed verdict is, if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt ... then the defendant is entitled to a directed verdict of acquittal." *Id.* (*citing Commonwealth v. Sawhill*, 660 S.W.2d 3 (Ky.1983)); *see also Beaumont v. Commonwealth*, 295 S.W.3d 60, 67 (Ky.2009). Thus, "there must be evidence of substance, and the trial court is expressly authorized to direct a verdict for the defendant if the prosecution produces no more than a mere scintilla of evidence." *Benham*, 816 S.W.2d at 187–88. However, we reemphasize that an evaluation of the sufficiency of evidence depends on "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Beaumont*, 295 S.W.3d at 68 (*citing Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)).

A review of the evidence presented in this case clearly indicates that the trial court correctly determined that a reasonable jury could fairly find guilt beyond a reasonable doubt. The Commonwealth produced more than a mere scintilla of "evidence of substance." *Benham*, 816 S.W.2d at 187–88. Under KRS 532.080(3), "[a] persistent felony offender in the first degree is a person who is more than twenty-one (21) years of age and who stands convicted of a felony after having been

---

9. This issue was properly preserved by the defense counsel's motion for a directed verdict on the first-degree PFO charge and the trial court's denial of said motion.

convicted of two (2) or more felonies, or one (1) or more felony sex crimes against a minor as defined in KRS 17.500, and now stands convicted of any one (1) or more felonies."

The jury ultimately heard oral evidence that Appellant had the following convictions based upon four separate indictments: (1) theft by unlawful taking, second-offense DUI, driving on a revoked license, and refusing to take a chemical test; (2) first-degree fleeing or evading police after an act of domestic violence and four counts of first-degree wanton endangerment; (3) third-degree assault and second-degree PFO; and (4) third-degree assault and PFO. The jury was also informed that Appellant was older than twenty-one years of age at the time of those convictions.[10]

Appellant argues, however, that the Commonwealth erroneously failed to introduce *actual* evidence of his prior criminal record. Instead, the Commonwealth read Appellant's criminal record aloud to the jury. However, the defense made no objection to the introduction of the evidence in this manner. Indeed, it implicitly agreed that the Commonwealth could introduce Appellant's prior convictions orally.[11] Given our pronouncement in Section II. C. supra, the parties may agree to the Commonwealth reading evidence of prior convictions (so long as it is limited to the elements of the crimes committed). The trial court therefore did not err in denying Appellant's motion for a directed verdict.

### III. CONCLUSION

For the aforementioned reasons, we affirm Appellant's convictions, but vacate his

sentence and remand for a new penalty phase consistent with this opinion.

MINTON, C.J.; ABRAMSON, CUNNINGHAM, NOBLE, and VENTERS, JJ., concur. SCHRODER, J., not sitting.

---

10. Appellant stipulated to the fact that he was born on July 28, 1979 and was thus thirty-one years of age.

11. A bench conference was held prior to the sentencing phase at which the Commonwealth informed the court it would be reading the indictments as proof that Appellant had the requisite felony convictions for PFO status. Appellant's counsel made no objections, and apparently agreed the Commonwealth could make this presentation.