RENDERED: AUGUST 28, 2020; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2018-CA-001723-MR

DWIGHT GIBSON                                                                    APPELLANT

v.

APPEAL FROM LETCHER CIRCUIT COURT
HONORABLE JAMES W. CRAFT II, JUDGE
ACTION NOS. 17-CR-00210 AND 17-CR-00211

COMMONWEALTH OF KENTUCKY                                          APPELLEE

OPINION
AFFIRMING IN PART, REVERSING IN PART,
AND REMANDING

** ** ** ** **

BEFORE: KRAMER, LAMBERT, AND K. THOMPSON, JUDGES.

THOMPSON, K., JUDGE: Dwight Gibson appeals from the Letcher Circuit

Court's judgment following his conviction at trial of two counts of first-degree

trafficking in a controlled substance (first offense).[1] In accord with the jury's

recommendation, the trial court sentenced Gibson to two consecutive five-year

terms of incarceration with the Department of Corrections. After careful

---

[1] Kentucky Revised Statutes (KRS) 218A.1412, a Class D felony.

consideration, we affirm Gibson's conviction on the underlying offenses but reverse the sentence and remand for a new sentencing trial.

In 2017, Detective Wes Sandlin of the Kentucky State Police (KSP) employed a confidential informant, Wendy Lucas, to make controlled purchases of methamphetamine. Lucas, a methamphetamine user, agreed to work with KSP in order to gain favorable treatment on her pending drug possession charge. She was also paid one hundred dollars for each felony-level drug purchase. Lucas suggested Gibson as a target because she had purchased illicit drugs from him on previous occasions.

On two occasions, May 23 and May 31, 2017, Detective Sandlin used Lucas to make controlled purchases from Gibson. Lucas was equipped with a hidden video camera on both occasions, and the video footage would later be admitted at Gibson's trial. After each transaction, Lucas returned to Detective Sandlin with an aluminum packet containing a crystalline substance. The KSP forensic laboratory later confirmed the substance was methamphetamine.

Lucas's videos are shaky, and the audio contains some static. Nonetheless, Gibson's face is shown at various points during the transactions. There are two notable incidents from the videos relevant to this appeal. First, during the May 23 transaction, Gibson states, "I've got so many people calling and texting me right now, I don't know. Thirty-two missed calls." Second, during the

May 31 transaction, Lucas observed Gibson placing pills containing pseudoephedrine in a soda bottle.  This is part of a process used to manufacture methamphetamine colloquially described as "shake and bake."

Based on these two transactions, the Letcher County grand jury issued two separate indictments, each charging Gibson on one count of first-degree trafficking in a controlled substance.  At Gibson's trial, the Commonwealth's case included testimony from Detective Sandlin, Lucas, and a forensic scientist from the KSP laboratory.  The jury also viewed the video recordings of the two transactions.  Gibson did not offer witnesses for his defense.  His trial strategy relied on attempting to shake Lucas's credibility through cross-examination and on depicting himself as a victim of entrapment.  Ultimately, the jury found Gibson guilty of both counts of trafficking in a controlled substance and recommended the maximum sentence of five years on each count, to run consecutively.  On September 27, 2018, the trial court entered its final judgment and sentence in accord with the jury's recommendation.  This appeal followed.

Gibson presents three issues on appeal.  First, he argues the trial court should have prevented the prosecutor from repeatedly referencing the uncharged act of manufacturing methamphetamine.  Gibson objected when the prosecutor asked Lucas to explain a "shake and bake" to the jury.  The trial court overruled the objection, ruling that Lucas could testify about what the bottle appeared to be.

-3-

Gibson now contends the trial court should have disallowed this evidence, asserting it was unduly prejudicial and irrelevant to the trafficking charges for which he was indicted.

"[A]buse of discretion is the proper standard of review of a trial court's evidentiary rulings." *Goodyear Tire and Rubber Co. v. Thompson*, 11 S.W.3d 575, 577 (Ky. 2000) (citations omitted). We give substantial deference to a trial court's evidentiary rulings "because the trial court is in the best position to evaluate the evidence." *Bailey v. Commonwealth*, 194 S.W.3d 296, 304 (Ky. 2006) (citations omitted).

The Kentucky Supreme Court considered the question of when evidence of uncharged offenses should be allowed in *St. Clair v. Commonwealth*, 455 S.W.3d 869 (Ky. 2015). In that case, the Court ruled

> [s]uch proof is ordinarily barred by KRE[2] 404(b) as evidence of other acts used to show character or propensity. But such proof may be admissible if offered for some other relevant purpose, KRE 404(b)(1), or "[i]f so inextricably intertwined with other evidence essential to the case that separation of the two . . . could not be accomplished without serious adverse effect on the offering party," KRE 404(b)(2).

*Id*. at 885. The Kentucky Supreme Court then explained that evidence is inextricably intertwined and, thus, admissible under KRE 404(b)(2)

---

[2] Kentucky Rules of Evidence.

when . . . [it] furnishes part of the context of the crime or is necessary to a full presentation of the case, or is so intimately connected with and explanatory of the crime charged against the defendant and is so much a part of the setting of the case and its environment that its proof is appropriate in order to complete the story of the crime on trial by proving its immediate context or the res gestae.

*Id*. (quoting *Webb v. Commonwealth*, 387 S.W.3d 319, 326 (Ky. 2012)).

Here, we cannot say the trial court abused its discretion in permitting evidence regarding the "shake and bake" laboratory because it was intertwined with the video and audio evidence of the second transaction for which Gibson was indicted. Furthermore, we cannot say it was an abuse of discretion for the trial court to admit Lucas's testimony about the laboratory because she was explaining the events depicted in the video and audio evidence for the jury. "[T]he jury cannot be expected to make its decision in a void without knowledge of the time, place and circumstances of the acts which form the basis of the charge, and thus the prosecution is allowed to prove the setting of a case[.]" *Id*. (citations and internal quotation marks omitted).

Gibson's second and third issues on appeal both concern the penalty phase of his trial and we will consider them together. For his second issue, Gibson asserts error in how the prosecutor asked the deputy clerk to describe the penalty Gibson received in a criminal trespassing case. The deputy clerk responded that Gibson "was given a fine and to remain off Donna Mullins's property." Gibson

-5-

did not object at the time but now contends this was improper and prejudicial. He asks for palpable error review of the unpreserved error under RCr[3] 10.26:

> Under Criminal Rule 10.26, an unpreserved error may only be corrected on appeal if the error is both palpable and affects the substantial rights of a party to such a degree that it can be determined manifest injustice resulted from the error. For error to be palpable, it must be easily perceptible, plain, obvious and readily noticeable. The rule's requirement of manifest injustice requires showing . . . [a] probability of a different result or error so fundamental as to threaten a defendant's entitlement to due process of law.

*Young v. Commonwealth*, 426 S.W.3d 577, 584 (Ky. 2014) (citations and internal quotation marks omitted).

The Kentucky Supreme Court has routinely and repeatedly instructed the Commonwealth to avoid giving the names of previous victims in the penalty phase. This is commonly referred to as a *Mullikan* error, and the Supreme Court thoroughly explained it as follows:

> KRS 532.055 states: "Evidence may be offered by the Commonwealth relevant to sentencing including: (1) Minimum parole eligibility, prior convictions of the defendant, both felony and misdemeanor; and (2) The nature of prior offenses for which he was convicted." However, "[t]he trial court should avoid identifiers, such as naming of victims, which might trigger memories of jurors who may—especially in rural areas—have prior knowledge about the crimes." *Mullikan v. Com.*, 341 S.W.3d 99, 109 (Ky. 2011).

---

[3] Kentucky Rules of Criminal Procedure.

*Stansbury v. Commonwealth*, 454 S.W.3d 293, 304 (Ky. 2015). The Kentucky

Supreme Court also explained how a *Mullikan* error may very well result in

palpable error:

> We held in *Webb v. Commonwealth*, 387 S.W.3d 319,
> 330 (Ky. 2012) that introducing improper evidence
> during the penalty phase such as "highly prejudicial
> information concerning the victims of the prior crimes" is
> a "prejudice . . . so egregious as to have resulted in
> manifest injustice, in that failure to correct the error
> would seriously affect the fairness, integrity, and public
> reputation of the judicial proceeding." *Id. quoting*
> *Mullikan*, 341 S.W.3d at 109.

*Id*.

Moving to Gibson's third issue, he asserts error in the prosecutor's

closing argument during the penalty phase, wherein the prosecutor repeatedly

urged the jury toward a severe penalty on the basis of the "thirty-two missed calls"

mentioned in the video evidence. In his closing during the penalty phase, the

prosecutor began by describing "drug trafficking in this area [as] an epidemic."

This drew an objection from the defense, which was overruled. The prosecutor

then told the jury that the "thirty-two missed calls" meant there were thirty-two

other victims, stating, "Thirty-two members of this community. Thirty-two.

Thirty-two lives which have been affected by [Gibson]. Thirty-two families."

Gibson objected, arguing the sentence should be based on the two offenses for

which he was actually convicted.  The trial court overruled the objection, and the prosecutor returned to his theme of the thirty-two unknown victims in this case.

Although it is true that "[a] prosecutor may comment on tactics, may comment on evidence, and may comment as to the falsity of the defense position[,]" *Stopher v. Commonwealth*, 57 S.W.3d 787, 806 (Ky. 2001) (citation omitted), such latitude is not without limits.  A prosecutor's "exhortation to [the] jury to 'send a message' to the community [is] improper." *Brewer v. Commonwealth*, 206 S.W.3d 343, 351 (Ky. 2006).  As we have described it previously, "the Commonwealth is not at liberty to place upon the jury the burden of doing what is necessary to protect the community." *McMahan v. Commonwealth*, 242 S.W.3d 348, 351 (Ky.App. 2007) (citations omitted).  When the Commonwealth strays into such territory, a timely objection by the defense will result in reversible error.  *See Brewer*, 206 S.W.3d at 351; *McMahan*, 242 S.W.3d at 351.

Applying these principles, we consider the prosecutor's invocation of thirty-two unnamed, unknown victims to have been an improper call to the jury to protect the community.  The prosecutor used the video's reference to thirty-two missed calls and extended it to mean that Gibson should be punished for the suffering of "thirty-two families."  The prosecutor extended this argument still further and urged Gibson's punishment should reflect the severity of the drug

-8-

abuse problem in Appalachia generally. "A prosecutor 'may strike hard blows' but 'is not at liberty to strike foul ones.'" *United States v. Acosta*, 924 F.3d 288, 293 (6th Cir. 2019) (quoting *Berger v. United States*, 295 U.S. 78, 88, 55 S. Ct. 629, 79 L. Ed. 1314 (1935)).

Considered together, Gibson's second and third arguments have merit and require a new sentencing trial. First, it is clear that a *Mullikan* error may be palpable. "We have good, clear, published case law wherein we have repeatedly advised the Commonwealth to stop introducing the very type of evidence in question here. Furthermore, we have held that disregarding this advice amounts to palpable error." *Stansbury*, 454 S.W.3d at 304-05. The prosecutor then compounded this error by urging the jury to punish Gibson for the generalized scourge of drugs in the community, and the trial court allowed the prosecutor to do so despite a contemporaneous objection.

Palpable error may be found when it results in manifest injustice, and "[m]anifest injustice is found if the error seriously affected the fairness . . . of the proceeding." *Kingrey v. Commonwealth*, 396 S.W.3d 824, 831 (Ky. 2013) (citation omitted). There was certainly ample evidence to convict Gibson. However, at the time of trial, Gibson was twenty-three years old with two misdemeanors on his criminal record. For his two first-offense trafficking convictions, Gibson was given two consecutive maximum sentences resulting in

ten years' incarceration. He could not have received a more severe sentence if he had entered an open guilty plea at his arraignment. The previous high court told us we may infer prejudice to an appellant based on his or her sentence. *Taulbee v. Commonwealth*, 438 S.W.2d 777, 779 (Ky. 1969). Based on these factors, we hold Gibson suffered palpable error resulting in manifest injustice during his penalty phase and must be resentenced.

For the foregoing reasons, we affirm the Letcher Circuit Court's judgment of conviction but reverse Gibson's sentence. On remand, the trial court shall conduct a new sentencing trial for Gibson not inconsistent with this opinion.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Steven J. Buck
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Andy Beshear
Attorney General of Kentucky

Courtney J. Hightower
Assistant Attorney General
Frankfort, Kentucky