RENDERED: APRIL 4, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-0120-MR

REGINA L. PERRY                                                APPELLANT

v.          APPEAL FROM KENTON CIRCUIT COURT
            HONORABLE KATHLEEN LAPE, JUDGE
            ACTION NO. 22-CR-01012

COMMONWEALTH OF KENTUCKY                                        APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: EASTON, ECKERLE, AND TAYLOR, JUDGES.

ECKERLE, JUDGE:

Appellant, Regina L. Perry ("Perry"), challenges, as a matter of right,

the Kenton Circuit Court's Judgment of Conviction and Sentence on Verdict. For

the reasons set forth herein, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On August 17, 2019, Perry cashed a fraudulent check in the amount of $7,000.00 (the "Check") at CheckSmart, located in Covington, Kentucky. The Check, dated August 16, 2019, named Perry as the payee and was drawn upon "Performance Title Escrow Account." A Kenton Circuit Court Grand Jury subsequently indicted Perry on the charge of second-degree criminal possession of a forged instrument. The Circuit Court conducted a jury trial on October 31, 2023.

The following individuals testified for the Commonwealth during its case-in-chief: CheckSmart's branch manager, Pamela Chenot; Performance Title's founder and manager, Brian Bauer; and Covington Police Detective, Eric Higgins. The Commonwealth's proof consisted of a copy of the Check, CheckSmart's surveillance footage capturing Perry cashing the Check, Perry's signed CheckSmart application for check-cashing services, a photo CheckSmart took of Perry as part of its check-cashing procedure, and a copy of Perry's driver's license.

Chenot testified to CheckSmart's application and check-cashing process. Chenot explained that CheckSmart clients are required to complete an application that includes the client's contact information, references, and signature. In addition, CheckSmart copies the client's government-issued, identification card bearing a photograph, and it takes an in-store photograph as well. During Chenot's testimony, the Commonwealth played CheckSmart's surveillance footage

depicting Perry's actions on the day in question. On several occasions, the Commonwealth paused the recorded footage and questioned Chenot about the depictions therein. Through this trial technique, the Commonwealth elicited Chenot's opinion that the individual portrayed in the surveillance footage matched the individual displayed in both the CheckSmart in-store picture and the picture on Perry's driver's license. Notably, Chenot testified that she was not present at CheckSmart on the date the footage was recorded.

Bauer's testimony revealed that Perry had no prior dealings or affiliation with Performance Title, and it did not owe Perry $7,000.00. Bauer also testified that only he and his secretary were authorized to print and sign Performance Title's checks. When presented with the Check, Bauer opined that it was created fraudulently based on obvious inconsistencies when compared to authentic checks issued by Performance Title. Bauer pointed out to the jury that the Check listed the wrong phone number, utilized incorrect font, displayed irregular wording, and reflected an unknown signature.

Higgins testified regarding the information pertaining to his investigation. He concluded that the Check's endorsing signature appeared to match Perry's signature as displayed on her driver's license.

The guilt phase of the jury trial lasted under one hour. The jury retired for deliberation at 1:35 p.m. Video Record ("VR") 10/31/23 at 1:35:07.

The next record event occurs at 2:31 p.m., at which time the Trial Court states on the record that the jury is unable to reach a verdict. VR 10/31/23 at 2:31:24. The Trial Court then provided the jury with an *Allen* charge,[1] after which the jury departed the courtroom to continue deliberations at 2:34 p.m. VR 10/31/23 at 2:33:37-2:34:30. Less than 25 minutes later, at 2:59 p.m., the jury returned a guilty verdict. VR 10/31/23 at 2:59:11.

The sentencing phase commenced thereafter. The Commonwealth called Probation and Parole Officer, Amy Bayless, to testify to Perry's prior felony conviction. Bayless testified that Perry was convicted of felony theft in Clermont County, Ohio. When questioning Bayless about Perry's resulting sentence, the Commonwealth asked if the Ohio Court ordered Perry to pay restitution to Eastgate Harley Davidson in the amount of $22,000.00. Bayless answered in the affirmative. Following Bayless' testimony, Perry testified on her own behalf. Perry admitted that she was on parole when she committed the instant crime. Perry also claimed that she "relapsed" during the pendency of the case, and the Ohio Court consequently revoked her.

The jury ultimately recommended that the Trial Court sentence Perry to the maximum sentence of five-years' imprisonment. On January 5, 2024, in conformity with the jury's recommendation, the Trial Court sentenced Perry to

---

[1] *Allen v. United States*, 164 U.S. 492, 17 S. Ct. 154 41 L. Ed. 528 (1896).

serve five years in prison and ordered her to pay restitution in the amount of $6,300.00.[2]

Perry appeals her conviction and sentence, raising two grounds for reversal. Perry's first assignment of error claims that Chenot invaded the jury's province by impermissibly interpreting the CheckSmart surveillance footage. Second, Perry alleges that Bayless' testimony erroneously disclosed details of Perry's prior theft conviction and sentence, namely the identity of the victim, Harley Davidson, and the amount of restitution. Perry acknowledges that neither error was preserved for review but requests relief pursuant to Kentucky Rules of Criminal Procedure ("RCr") 10.26.

## STANDARD OF REVIEW

Appellate courts may evaluate unpreserved claims of error pursuant to palpable error review as delineated in RCr 10.26. This Rule permits reversal if the reviewing court perceives "a palpable error which affects the substantial rights of a party [and] manifest injustice has resulted from the error." Palpability, of course, is centered on obviousness – meaning, the error must "be easily perceptible, plain, obvious and readily noticeable." *Brewer v. Commonwealth*, 206 S.W.3d 343, 349 (Ky. 2006) (internal quotation marks and citation omitted). Furthermore, the party

---

[2] While the Check was in the amount of $7,000.00, CheckSmart subtracted its fee from the Check total, thereby remitting cash to Perry in the amount of $6,300.00.

requesting relief must demonstrate the "probability of a different result or error so fundamental as to threaten a defendant's entitlement to due process of law." *Martin v. Commonwealth*, 207 S.W.3d 1, 3 (Ky. 2006). Said differently, the error must be "shocking or jurisprudentially intolerable." *Id.* at 4. Under this standard, we must consider "the whole case" and determine if "a substantial probability exists that the outcome would have been different absent the [error] . . . ." *Manning v. Commonwealth*, 701 S.W.3d 478 (Ky. 2024) (quoting *Martin*, 207 S.W.3d at 3).

## **ANALYSIS**

A. *Surveillance Footage Testimony*

Perry contends that it was palpable error for the Trial Court to allow Chenot to testify as to her interpretation of the CheckSmart surveillance footage considering she lacked personal knowledge of the events depicted therein. While testifying, the Commonwealth played portions of CheckSmart's surveillance footage showing Perry tendering documents to the CheckSmart teller and, in turn, receiving an envelope prior to departing the store. Perry takes specific aim at the Commonwealth's leading questions, some of which equated to its own interpretation of the surveillance footage, and Chenot's affirmative answers in response. For brevity, however, and based on the confines of palpable error review, Perry's argument centers on Chenot's identification of the individual in the

surveillance footage as being the same individual captured in the CheckSmart in-store picture and as the individual on the driver's license photograph.

We agree that Chenot's testimony identifying Perry exceeded the bounds of permissibility under Kentucky Rules of Evidence ("KRE") 701 and 602. In pertinent part, KRE 701 confines lay opinion testimony to those opinions "[r]ationally based on the perception of the witness[.]" Likewise, KRE 602 prohibits witness testimony "unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." As Chenot was not present at CheckSmart on the date of the surveillance recording and had no personal knowledge of the events transpired therein, her interpretation of the surveillance footage, including her agreement with the Commonwealth's interpretation, was error. *See also Morgan v. Commonwealth*, 421 S.W.3d 388, 392 (Ky. 2014); *Cuzick v. Commonwealth*, 276 S.W.3d 260, 265-66 (Ky. 2009) (holding that a lay witness "may not interpret audio or video evidence, as such testimony invades the province of the jury, whose job is to make determination of fact based upon the evidence").

However, despite the impropriety of the Commonwealth's questions and Chenot's testimonial responses, the error does not warrant relief under RCr 10.26. *See Bowman v. Commonwealth*, 686 S.W.3d 230, 246-47 (Ky. 2024) (detective's improper narration of surveillance footage did not constitute palpable

error where footage is clear, and the jury was free to interpret it independently). In review of Chenot's testimony, we detect two instances wherein she identified the individual in the surveillance footage as matching either Perry's in-store photograph or driver's license picture. Yet Chenot's testimony occurred only after the jury witnessed the footage without any contemporaneous narration.

Considering the evidence as a whole, Perry fails to demonstrate the substantial possibility of a different outcome absent the error, or that Chenot's testimony was jurisprudentially intolerable so as to threaten the integrity of the judicial process. Here, the jury was free to review independently the copies of the documents depicted in the footage, including Perry's signed application, Perry's driver's license, and Perry's CheckSmart in-store photograph. Thus, the jury was able to identify Perry as the individual shown on the surveillance footage regardless of Chenot's interpretive testimony.

Additional evidence also established Perry's guilt. Higgins testified that Perry's signed license matched the endorsing signature on the Check, as both signatures included the same distinctive feature. We must also note that Perry did not assert any proof, testimony, or defense indicating that she was not the individual who appeared on the surveillance footage. According to defense counsel's closing argument, Perry's defense focused on the Commonwealth's

failure to prove the requisite elements of the crime, particularly Perry's intent to defraud CheckSmart and/or create or alter the Check.

Perry suggests that the short length of the jury trial, along with the jury's quick deliberation, both before and after the Trial Court's *Allen* charge, demonstrates the requisite prejudice. We disagree. In cases such as the one before this Court, where the facts are straightforward and proof concise, the duration of a trial is not necessarily indicative of the strength of the prosecution's case. To hold otherwise would encourage needless or cumulative evidence or testimony. In this same vein, this Court cannot locate any precedential authority standing for the proposition that the length of a jury's deliberation following an *Allen* charge necessarily renders an unpreserved evidentiary error manifestly unjust.

Based on the evidence demonstrating Perry's guilt, coupled with the jury's ability to identify Perry independently on the surveillance footage, Chenot's testimony did not rise to the level of palpable error requiring reversal.

B. *Sentencing Testimony*

During the penalty phase, Bayless discussed Perry's criminal history. Bayless testified that Perry was convicted in Ohio for felony theft and ordered to pay Eastgate Harley Davidson $22,000 in restitution. As stated *supra*, Perry did not preserve this alleged error.

In *Mullikan v. Commonwealth*, the defendant was convicted of multiple charges arising from his unprovoked, physical attack of two individuals. 341 S.W.3d 99, 101-02 (Ky. 2011). During sentencing, the jury heard testimony detailing the factual circumstances of the defendant's prior assault conviction, including that he put his hands around an elderly woman's neck while at a local community store. *Id.* at 108. In evaluating the permissibility of such details, our Supreme Court developed a bright-line rule that "evidence of prior convictions is limited to conveying to the jury the elements of the crimes previously committed," and that "[t]he trial court should avoid identifiers such as naming of victims, which might trigger memories of jurors who may – especially in rural areas – have prior knowledge about the crimes." *Id.* at 109. Consequently, pursuant to *Mullikan*, we agree it was error for Bayless to state the restitution amount and name Harley Davidson as the victim because such information exceeds the elements of the crime.

Despite this perceived error, this Court does not find that reversal is warranted under RCr 10.26. Bayless' identification of the restitution amount and victim was fleeting and insubstantial. Indeed, this is not a situation akin to that our Supreme Court described in *Webb v. Commonwealth*, 387 S.W.3d 319 (Ky. 2012). In that case, the defendant was convicted of the attempted murders of two officers. *Id.* at 323. During the sentencing phase, the Commonwealth presented evidence of

defendant's prior convictions. *Id.* at 329. Specifically, "the Commonwealth read the names of eight victims, five of which [sic] were law enforcement officers, and told jurors details other than the elements of the charged offense." *Id.* The Kentucky Supreme Court found the Commonwealth's presentation of such information was palpable error. *Id.* at 330. Undoubtedly, this Court is not presently faced with such discernable prejudice.

Here, the identified victim is a non-local, corporate business with no alleged affiliation or connection to Kenton County. Consequently, the manifest injustice illustrated in *Webb* is not present in the case *sub judice*. Furthermore, the jury heard adequate testimony supporting its recommendation that the Trial Court impose the maximum sentence. For example, the jury heard testimony that Perry was on parole when the present crime occurred, that she committed a bond violation due to drug use, and that she committed a previous crime of theft. Accordingly, we do not believe there is a substantial likelihood that absent Bayless' testimony concerning the amount of restitution and identification of Perry's prior victim would have resulted in the jury recommending a lesser sentence. Therefore, we decline Perry's request for a new penalty phase based on palpable error.

## CONCLUSION

Having found no palpable error, we hereby affirm the Kenton Circuit

Court's Judgment of Conviction and Sentence on Verdict.


ALL CONCUR.

BRIEF FOR APPELLANT:

Aaron Reed Baker
Assistant Public Advocate
Department of Public Advocacy
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Russell Coleman
Attorney General of Kentucky

Brystin Denguessi Kwin
Assistant Attorney General
Frankfort, Kentucky