# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.



Supreme Court of Kentucky

2013-SC-000446-MR

DATE 11-13-14 EwAGrowth, D.C.

STEPHON SLONE
APPELLANT

ON APPEAL FROM PERRY CIRCUIT COURT
V.
HONORABLE WILLIAM ENGLE III, JUDGE
NO. 12-CR-00220

COMMONWEALTH OF KENTUCKY
APPELLEE

## MEMORANDUM OPINION OF THE COURT

## AFFIRMING

Appellant, Stephon Slone, appeals from a judgment of the Perry Circuit Court convicting him of first-degree rape and of being a second-degree persistent felony offender. As a result of these convictions Appellant was sentenced to twenty years' imprisonment.

As grounds for relief Appellant contends that (1) he was entitled to a directed verdict of acquittal on the rape charge; (2) he did not receive a fair trial because of prosecutorial misconduct; (3) the trial court's failure to declare a mistrial in response to the Commonwealth's discovery violations produced a manifest injustice; (4) he was denied the right to present his defense when the trial court refused to permit him to introduce into evidence a juvenile court petition filed against the victim; and (5) the trial court erroneously permitted the Commonwealth to introduce evidence concerning his prior drug use.

For the reasons stated below, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Appellant and his girlfriend, Teresa, had lived together with her son and her daughter, "Helen,"[1] as a family household for over a decade when for a few months in 2011, Teresa was incarcerated. Helen was fourteen years old. Appellant was thirty.

Several weeks after her mother's release, Helen made a 911-call to report that Appellant had raped her three times. When interviewed later that day, Helen told Kentucky State Police detective Chris Collins that she had been raped only once. She also told a child welfare worker that she had been raped only once, and she made the same allegation when she testified before the grand jury.

As a result of Helen's allegation, Appellant was indicted on one count of first-degree rape by forcible compulsion, KRS 510.040(1)(a), and second-degree persistent felony offender status.

Appellant denied the charge of rape, and he asserted at trial that Helen had invented the allegation as retaliation against him because he had objected to her romantic involvement with an eighteen-year old boy. Contrary to her earlier statements, Helen testified at trial that Appellant had raped her on many occasions. The jury returned a guilty verdict and judgment was entered as noted above. On appeal, Appellant raises five grounds for reversal.

---

[1] Helen is a pseudonym we have used to protect the privacy of the minor involved.

## II. SUFFICIENCY OF THE EVIDENCE

Appellant first contends that he was entitled to a directed verdict on the first-degree rape charge. Our standard for review of such claims is well established in *Commonwealth v. Benham*, 816 S.W.2d 186 (Ky. 1991). On appellate review, the reviewing court may only direct a verdict "if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt." *Id.* at 187. *See also Commonwealth v. Sawhill*, 660 S.W.2d 3, 5 (Ky. 1983) ("The trial court must draw all fair and reasonable inferences from the evidence in favor of the [Commonwealth], and a directed verdict should not be given unless the evidence is insufficient to sustain a conviction.").

To convict on first-degree rape by forcible compulsion, the Commonwealth must show that the accused engaged in sexual intercourse with another person, without that person's consent, by using "physical force or threat of physical force, express or implied, which places a person in fear of immediate death, physical injury to self or another person, fear of the immediate kidnap of self or another person, or fear of any offense under [KRS Chapter 510]." KRS 510.010(2). Upon review of the record, we are satisfied that the Commonwealth met that burden. Sufficient evidence was presented at trial to support a reasonable juror's belief that Appellant engaged in conduct that met the statutory standard for first-degree rape.

Helen testified that Appellant entered her bedroom, told her to lie down on her bed, put his hands around her throat, and sexually penetrated her with his penis against her will. She testified that afterward, Appellant threatened

3

that he would kill her, her mother, her brother, and himself if she told anyone what had happened. Helen testified that Appellant's act caused her pain and vaginal bleeding. In addition, testimony provided by sexual assault nurse examiner Alicia Cook established that there was physical evidence to support the allegation. Cook testified that her physical examination of Helen revealed indications of trauma to the victim's vaginal area, including a tear on the posterior fourchette, which despite the intact hymen, could have been the result of penile penetration. The injury to the victim's genital area supports the allegation of forced sexual activity.

Appellant argues that the evidence tending to establish his guilt was so convincingly negated by exculpatory evidence that, as a whole, the proof was more consistent with his innocence than his guilt, and therefore, the finding of guilt was clearly unreasonable under the *Benham* and *Sawhill* standard. He cites testimony which showed that he had a "father-daughter" relationship with Helen; Helen's inconsistent statements regarding the number of times she had been raped; her delay in reporting the rapes; and the fact that she only reported the rapes while staying with a friend. He also cites evidence casting doubt upon Helen's credibility, including her motive to fabricate the charge because Appellant objected to her relationship with an eighteen-year old boy and her lies to conceal her relationship with the boy. Appellant also contends that because the victim cried and was emotional during her testimony that the jury's verdict was a product of passion and prejudice brought about by the victim's poignant testimony.

4

We disagree with Appellant's position. It is well established that a jury is free to believe the testimony of one witness over the testimony of others. *See Adams v. Commonwealth*, 560 S.W.2d 825, 827 (Ky. App. 1977). In ruling upon Appellant's motion, the trial court was required to construe conflicting evidence in the light most favorable to the Commonwealth. *Benham*, 816 S.W.2d at 187. The testimony of a single witness is enough to support a conviction. *See Gerlaugh v. Commonwealth*, 156 S.W.3d 747, 758 (Ky. 2005) (*citing LaVigne v. Commonwealth*, 353 S.W.2d 376, 378–79 (Ky. 1962)). Further, matters of credibility and of the weight to be given to a witness's testimony are solely within the province of the jury. An appellate court cannot substitute its judgment on such matters for that of the jury. *Brewer v. Commonwealth*, 206 S.W.3d 313, 319 (Ky. 2006) (*citing Commonwealth v. Jones*, 880 S.W.2d 544, 545 (Ky. 1994)). Therefore, we may not simply reject the victim's testimony and instead choose to believe Appellant's version because "[d]etermining the proper weight to assign to conflicting evidence is a matter for the trier of fact and not an appellate court." *Washington v. Commonwealth*, 231 S.W.3d 762, 765 (Ky. App. 2007)[2] (*citing Bierman v. Klapheke*, 967 S.W.2d 16, 19 (Ky. 1998)).

Based upon the evidence as a whole, and upon viewing that evidence in the light most favorable to the verdict, we are constrained to conclude that it was not unreasonable for a jury to believe that Appellant raped the victim by

---

[2] Overruled on other grounds by *King v. Commonwealth*, 302 S.W.3d 649 (Ky. 2010) (reversed and remanded by *Kentucky v. King*, 131 S.Ct. 1849 (2011)).

forcible compulsion.  Accordingly, the trial court did not err in denying Appellant's motion for a directed verdict on the first-degree rape charge.

## III.  PROSECUTORIAL MISCONDUCT ISSUES

Appellant next argues that he was denied a fair trial because the prosecutor persistently and deliberately engaged in misconduct.  Specifically Appellant contends that prosecutorial misconduct occurred when the prosecutor: (1) accused the defense of fabricating evidence, of having its witnesses lie on the stand, of the defense witnesses collaborating with one another about their testimony, and accusing defense counsel of lying; (2) failed to make timely disclosure of the victim's inconsistent allegation of multiple rapes;[3] (3) failed to make timely disclosure of Alicia Cook's medical report;[4] (4) accused defense counsel of fabricating evidence and lying to the trial court in connection with a screenshot of the victim's Facebook page; (5) implied that witnesses for the defense were testifying from a "script" prepared by defense counsel and the victim's mother; (6) accused defense counsel during cross-examination of the victim of "being argumentative and badgering this little girl"; (7) stated rhetorically aloud, "That's sad, you know that," in response to the victim's testimony that she could not trust anyone; (8) during a recess approached in an intimidating manner a sixteen-year old witness without the witness's parents being present, which Appellant claims was an attempt to

---

[3] This allegation of error was clearly preserved for appellate review and is discussed in the following section of this opinion.

[4] This allegation of error was clearly preserved for appellate review and is discussed in the following section of this opinion.

intimidate the witness; and (9) knowingly asked improper questions and then responded to trial counsel's objection by chuckling and withdrawing the improper question.

The Commonwealth responds that, with two exceptions, none of the above allegations were preserved for appellate review by a contemporaneous objection at trial.[5] To rebut the claim of inadequate preservation, Appellant notes that his brief cited to nineteen points in the video record where he objected to the prosecutor's misconduct. However, Appellant merely provided a list of citations to the record without indicating how any particular point relates to any particular allegation of misconduct. CR 76.12(4)(c)(v) requires the argument in support of each claim to have "ample supportive references to the record and citations of authority pertinent to each issue of law and . . . at the beginning of the argument a statement with reference to the record showing whether the issue was properly preserved for review and, if so, in what manner." Appellant's collage of citations to the video record without correlating them to a specific issue does not comply with 76.12(4)(c)(v). When an appellate advocate fails to abide by this rule our options are: (1) to ignore the deficiency and proceed with the review; (2) to strike the brief or its offending portions, CR 76.12(8)(a); or (3) to review the issues raised in the brief for manifest injustice only. *Hallis v. Hallis*, 328 S.W.3d 694, 696 (Ky. App. 2010).

Here, we employ the third option and examine Appellant's argument of prosecutorial misconduct for manifest injustice only. "Where there was no

---

[5] See n. 3 and n. 4.

7

objection [to prosecutorial misconduct], we will reverse only where the misconduct was flagrant and was such as to render the trial fundamentally unfair." *Duncan v. Commonwealth*, 322 S.W.3d 81, 87 (Ky. 2010).

Generally, Appellant's claims of prosecutorial misconduct consist of demeaning comments that tend to degrade Appellant's case and his witnesses, insinuations of a defense effort to present false testimony at trial, and attempts to sway the jury with undue sympathy for the victim. Upon review, we are unpersuaded that these tactics, individually or cumulatively, resulted in a manifest injustice or rendered the trial fundamentally unfair. RCr 10.26. "Manifest injustice" requires showing a probability of a different result or error so fundamental as to threaten a defendant's entitlement to due process of law, i.e., the error so seriously affected the fairness, integrity, or public reputation of the proceeding as to be "shocking or jurisprudentially intolerable." *Martin v. Commonwealth*, 207 S.W.3d 1, 3-4 (Ky. 2006). While we may find some of the prosecutor's behavior at trial to be offensive, we cannot say that Appellant is entitled to relief under the manifest injustice standard.

## IV. DISCOVERY VIOLATION ISSUES

Appellant next claims that he was deprived of a fair trial because the Commonwealth failed to make timely disclosure of exculpatory evidence contained in (1) the medical report prepared by Alicia Cook in connection with her physical examination of Helen; and (2) Helen's prior statements that Appellant had raped her on multiple occasions.

8

Appellant frames this issue as violations of *Brady v. Maryland*, 373 U.S. 83 (1963). Under *Brady* and its progeny, a defendant's due process rights are violated when the prosecution fails to disclose material exculpatory evidence to the defense, regardless of the prosecution's good or bad faith. *Id.* at 87; *United States v. Agurs*, 427 U.S. 97, 107 (1976). Impeachment evidence is included within the scope of exculpatory evidence that is subject to *Brady*. *United States v. Bagley*, 473 U.S. 667, 676 (1985).

However, the disclosure requirement applies only to "those cases in which the government possesses information that the defense does not." *Bowling v. Commonwealth*, 80 S.W.3d 405, 410 (Ky. 2002). Further, "*Brady* applies only to 'the discovery, *after trial*, of information which had been known to the prosecution but unknown to the defense.'" *Id.*, (*quoting Agurs*, 427 U.S. at 103) (emphasis added). In other words, *Brady* and its progeny address situations in which a defendant goes through a trial unaware of the availability of exculpatory information withheld by the prosecution. Here however, Appellant became aware of Cook's report and the victim's prior inconsistent statement either *before* or *during* his trial, and so *Brady* is not directly implicated. Instead, RCr 7.24 is the controlling authority which will guide our review of the issues presented in this argument. This rule broadly requires, among other things, the prosecution to provide a defendant with disclosure of information in its possession which is material to his defense. RCr 7.24(9) provides the remedy:

9

> If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule or an order issued pursuant thereto, the court may direct such party to permit the discovery or inspection of materials not previously disclosed, grant a continuance, or prohibit the party from introducing in evidence the material not disclosed, or it may enter such other order as may be just under the circumstances.

"[A] trial court generally has broad discretion under RCr 7.24(9) to impose an appropriate sanction for a discovery violation." *Jones v. Commonwealth*, 237 S.W.3d 153, 157 (Ky. 2007). With these principles in mind we now address the two areas of alleged discovery violations raised by Appellant.

## A. Medical Examination Report

In connection with the rape investigation, Cook examined Helen and prepared a report that was subject to the trial court's pre-trial discovery order. Despite earlier claims of the Commonwealth that no medical report existed, one week before the trial, defense counsel was given a copy of Cook's three-page report.[6] The late disclosure prompted Appellant to move to suppress the report and to prohibit Cook from testifying.

To resolve the pending motion, and apparently to ascertain the tenor of Cook's anticipated testimony, on the second day of trial the court allowed the parties to examine Cook outside the presence of the jury. It was at that point that Cook revealed a fact she had omitted from the written report: the victim's hymen was intact and undamaged, although other indications of vaginal trauma were present. Cook agreed that her observations were consistent with

---

[6] The Commonwealth asserts that it was unaware of the report's existence until a week before the trial at which time it promptly supplied the report to defense counsel.

10

Helen's claim of being raped once. Cook further admitted that the intact hymen made it possible that Helen was a virgin and unlikely that she had been raped on multiple occasions as she claimed at trial.

After Cook's *in camera* testimony, the Commonwealth elected not to call her as a witness. Appellant promptly withdrew his objection to Cook's testimony and instead elected to call her as a witness for the defense. He now argues that these late disclosures prevented him: 1) from getting his own expert on the possibility of rape despite the intact hymen; 2) from examining the jury on the subject during the *voir dire* stage; and 3) discussing those facts in his opening statement. Instead, defense counsel was left between a rock and hard place: he could ask for a mistrial and a continuance to better prepare a defense based upon the recent disclosure, which would further prolong Appellant's pretrial incarceration; or, he could make the best of the evidentiary turn by using the newly discovered information to his best advantage. Appellant chose the latter.

We appreciate the difficult and stressful challenges that trial attorneys face in even the best of circumstances, and we recognize the difficulties presented when sudden disclosures change the evidentiary landscape. When late disclosures are caused by an opposing party, whether from excusable neglect or deliberate deception, we must be attentive to remedy any injustice that results. But, by parsing out the particulars of Appellant's argument, we come to the conclusion that no violation occurred here.

11

The central point of Appellant's claim is that he was prejudiced because he was not told prior to trial that the physical examination of the victim disclosed an intact hymen. There is, however, no indication that the Commonwealth was aware of the fact any sooner than Appellant. The Commonwealth claims that it, too, was caught off-guard when, on the second day of the trial, Cook first mentioned it. The Commonwealth's sudden decision not to call Cook as its witness tends to support that claim of ignorance. The rules for discovery in criminal cases do not require the Commonwealth to disclose information it does not have. RCr 7.24. To establish a due process violation based upon a failure to disclose exculpatory information, it must be shown that the prosecutor, in good faith or bad, knew of the evidence and failed to disclose it. *Nunley v. Commonwealth*, 393 S.W.3d 9, 13 (Ky. 2013). The prosecution was under no obligation or affirmative duty to acquire that information. Appellant's claim that he was prejudiced by a late disclosure of the medical report is unavailing because the exculpatory evidence he complains about was not in the written report. Having the report sooner would not have prevented the dilemma he faced at trial.

In summary, we find no grounds upon which Cook's testimony or the late disclosure of her medical report would warrant reversal. Under the circumstances before us, we are simply unable to discern any error in the trial court's rulings relating to the medical report or to Cook's testimony.

12

## B. Prior Inconsistent Statements

As previously noted, Helen made conflicting statements about the number of times Appellant had raped her. She told the 911 operator that it happened "like three times." On several other occasions before trial, including in her grand jury testimony, she said Appellant had raped her only one time. At trial, she testified that Appellant had raped her so many times in fact that she lost count.

At trial, the Commonwealth conceded that it had known for several weeks prior to trial that Helen had made numerous inconsistent statements about the number of times Appellant had raped her. Based upon the failure to disclose that information prior to trial, Appellant moved for a mistrial. The trial court agreed that the prosecution should have disclosed that information, but it nevertheless denied Appellant's motion. The trial court reasoned that Appellant was aware of Helen's statement to the 911 dispatcher and therefore was on notice prior to trial that the victim had previously claimed that Appellant had raped her more than one time.

We agree with the trial court. Under the present circumstances, where Appellant was aware of and was able to impeach the witness on her inconsistent statements, the failure of the Commonwealth to disclose all of the known occasions upon which the victim made similar inconsistent claims did not result in a manifest necessity for a mistrial. *Winstead v. Commonwealth,* 327 S.W.3d 386, 402 (Ky. 2010) (A party must make a clear showing of "manifest necessity" for a mistrial, and we review a trial court's denial of a

motion for a mistrial for an abuse of discretion). Appellant was able at trial to impeach the victim's testimony by cross-examining her upon her multiple prior inconsistent statements that there had been only one sexual assault. A manifest necessity occurs only when the error is "of such character and magnitude that a litigant will be denied a fair and impartial trial and the prejudicial effect can be removed in no other way [except by grant of a mistrial]." *Gould v. Charlton Co., Inc.*, 929 S.W.2d 734, 738 (Ky. 1996). While the Commonwealth's failure to disclose all of the known occasions upon which the victim made inconsistent statements relevant to the crime was a violation of RCr 7.24, the error did not result in the level of prejudice required to establish a manifest necessity to terminate the proceedings.

In summary, we are unpersuaded that the delayed production of the medical examination report and the victim's inconsistent statement were errors such as would require the reversal of Appellant's conviction and sentence.

## V. EXCLUSION OF JUVENILE COURT PETITION AGAINST VICTIM DID NOT DEPRIVE APPELLANT OF HIS RIGHT TO PRESENT A DEFENSE

Appellant next contends that the trial court erred by prohibiting him from introducing into evidence a juvenile court petition relating to Helen that was filed by her mother. The petition charged that Helen was "beyond control" of her parents because she was not following the rules of household and was attempting to date an eighteen-year old boy against her parents' will. The trial court ruled that the juvenile court pleading could not be introduced into

14

evidence because it was hearsay. On appeal, Appellant frames this argument as a denial of his "right to present a defense."

The defense that Appellant sought to present was that Helen had fabricated the allegations against him as retaliation for his disapproval of her desire to date an older boy. The juvenile court petition asserted that "[Helen] will not obey the household rules, said juvenile has been communicating with over 18 years old [sic]; social workers have been investigated [sic] said case and requested that the family file beyond control." Appellant wanted to introduce the report to corroborate his claim that the victim had, indeed, been dating an older boy, thereby lending credence to his theory about her motive to lie about being raped. There is no doubt that the petition is an out-of-court statement that Appellant sought to use as evidence to prove the truth of the matters asserted in the petition. The statement was clearly hearsay. KRE 801(c).

Under the United States Constitution and the Kentucky Constitution, an accused has a right to present a complete and meaningful defense. *Brown v. Commonwealth*, 313 S.W.3d 577, 624–25 (Ky. 2010). "An exclusion of evidence will almost invariably be declared unconstitutional when it significantly undermine[s] fundamental elements of the defendant's defense." *Beaty v. Commonwealth*, 125 S.W.3d 196, 206–07 (Ky. 2003) (citation and internal quotation omitted). But the right to present a defense does not abrogate the rules of evidence. "[T]he defendant's interest in the challenged evidence must be weighed against the interest the evidentiary rule is meant to serve, and only if application of the rule would be arbitrary in the particular case or

disproportionate to the state's legitimate interest must the rule bow to the defendant's right." *McPherson v. Commonwealth*, 360 S.W.3d 207, 214 (Ky. 2012) (citations omitted); *Newcomb v. Commonwealth*, 410 S.W.3d 63, 85-86 (Ky. 2013).

In weighing Appellant's evidentiary interest in the juvenile court pleading against the jurisprudential interests served by the hearsay rule, we are satisfied that the trial court's application of the hearsay rule was neither arbitrary, nor was it disproportionate to the state's legitimate interest in the enforcement of this most basic and fundamental rule of evidence. Moreover, since the evidentiary content of the juvenile court document that Appellant wanted to introduce consisted entirely of statements made by Helen's mother, Appellant could have simply called her as a witness and examined her on the subject, thereby obtaining the same evidence in a manner that was consistent with, not in derogation of, our rules of evidence.

In the alternative, Appellant now asserts for the first time, that the evidence was admissible under the exception to the hearsay rule for business and/or public records exception. *See Combs v. Stortz*, 276 S.W.3d 282, 295 (Ky. App. 2009) ("KRE 803(6), (8), and (10) provide hearsay exceptions for records which are maintained by businesses and public agencies. Those rules require that minimal foundation be laid for the introduction of such records when self-authenticated under KRE 902.")

Appellant failed to assert this ground for admissibility at trial, and so may not raise this theory for the first time on appeal. *See Kennedy v.*

16

*Commonwealth*, 544 S.W.2d 219, 222 (Ky. 1976) (overruled on other grounds by *Wilburn v. Commonwealth*, 312 S.W.3d 321 (Ky. 2010)).

Moreover, Helen's brother testified that Helen had animosity toward Appellant because of his opposition to her boyfriend, and that she had threatened to have Appellant put in jail if she was not allowed to date. Furthermore, a juvenile court worker testified that the beyond-parental-control petition had been filed. Consequently, we are satisfied that Appellant was not deprived of the opportunity to present his defense.

## VI. EVIDENCE OF APPELLANT'S PAST DRUG USE

On direct examination, and not in response to the question posed by the prosecutor, Helen spontaneously testified that she had on occasion purchased illegal drugs for Appellant. Appellant objected and moved for a mistrial. The trial court overruled the objection based upon the rationale that the information was admissible under KRE 404(b)(2). As a follow up, Helen, was then permitted to testify that Appellant used drugs every day.

KRS 404(b) prohibits the admission of evidence of other crimes, wrongs, or acts to prove the character of a person in order to show action in conformity therewith. An exception to this general rule is codified in KRE 404(b)(2) such that prior bad act evidence may be introduced if it is "so inextricably intertwined with other evidence essential to the case that separation of the two (2) could not be accomplished without serious adverse effect on the offering party." As Professor Lawson points out, the words of KRE 404(b)(2) ("inextricably intertwined with other evidence essential to the case") "are

17

designed to be flexible enough to permit the state to present a complete and realistic picture of the crime committed by the defendant, including necessary context . . . and perspective." Robert G. Lawson, *The Kentucky Evidence Law Handbook*, § 2.25[4][b] (4th ed. 2003).

> One of the accepted bases for the admissibility of evidence of other crimes arises when such evidence "furnishes part of the context of the crime" or is necessary to a "full presentation" of the case, or is so intimately connected with and explanatory of the crime charged against the defendant and is so much a part of the setting of the case and its "environment" that its proof is appropriate in order "to complete the story of the crime on trial by proving its immediate context [ ]."

*Norton v. Commonwealth*, 890 S.W.2d 632, 638 (Ky. App. 1994); *see also Webb v. Commonwealth*, 387 S.W.3d 319 (Ky. 2012).

The Commonwealth argues that the evidence was properly admitted because its overall theory of the case was that during the period when the rape occurred Appellant exercised an extraordinary level of "domination and control" over the victim and the rest of the household. In this vein other evidence was elicited to the effect that Appellant had the windows of the home boarded; would not allow the victim to leave the house; that the victim's brother usually stayed away from the house; that Appellant beat the victim and Appellant's mother; that the victim's mother would lie to social services about the beatings; and that Appellant would go looking for her if she was delayed in returning home from school. Thus, the trial court reasoned that having Helen buy drugs was part and parcel to Appellant's "domination and control" over her during the time of the sexual assault.

18

The standard of review for a trial court's evidentiary rulings is abuse of discretion. *Goodyear Tire & Rubber Co. v. Thompson*, 11 S.W.3d 575, 577 (Ky. 2000). The test for abuse of discretion is "whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999).

Certainly there are situations in which a defendant's drug use is inextricably intertwined with the crime, and thus is admissible under KRE 404(b)(2). But, this is not such a case. Helen's claim that Appellant used drugs every day and that he would send her to buy drugs was not necessary for a complete and realistic picture of the forcible rape, including any necessary context and perspective for it. There is simply no other evidence linking Appellant's drug use to the rapes. The Commonwealth's evidence of Appellant's role in the household generally established his "domination and control" over fourteen-year old Helen, and the evidence of his drug use did nothing to further prove the point.

At most, the drug evidence was only marginally relevant under KRE 401 and its probative value was substantially outweighed by the risk of undue prejudice. KRE 403; *Bell v. Commonwealth*, 875 S.W.2d 882, 888–91 (Ky. 1994) (evidence of prior bad acts pursuant to KRE 404(b) should be excluded even if relevant and probative if its probative value is substantially outweighed by its prejudicial effect). Undue prejudice is most often found when there is a risk that the evidence "might produce a decision grounded in emotion rather than reason" or where the evidence "might be used for an improper purpose."

19

Kentucky Evidence Law at § 2.15[3][b]. *See, e.g., Purcell v. Commonwealth*, 149 S.W.3d 382, 400 (Ky. 2004)[7] (although prior acts of sexual voyeurism were relevant and probative, evidence should have been excluded because of its devastating effect in that it encouraged conviction because of "what [defendant] was, rather than what he did on the occasion of the charged offense."); *Brown v. Commonwealth*, 313 S.W.3d 577, 618 (Ky. 2010) (evidence is unduly prejudicial if it will induce the jury to decide a case based on an emotional response rather than the evidence presented.).

The trial court abused its discretion by allowing Helen's testimony of Appellant's drug use to be admitted into evidence under KRE 404(b)(2). Nevertheless, the presentation of the evidence was fleeting and was not otherwise emphasized by the Commonwealth. Since it was not used as a prosecutorial tool and did not tend to bolster the victim's version of events nor denigrate Appellant's denial, we are further persuaded that the error did not substantially sway the verdict and was, therefore, harmless. *Winstead v. Commonwealth*, 283 S.W.3d 678, 688–89 (Ky. 2009).

## VII. CONCLUSION

For the foregoing reasons, the judgment of the Perry Circuit Court is affirmed.

All sitting. All concur.

---

[7] Overruled on other grounds by *Commonwealth v. Prater*, 324 S.W.3d 393 (Ky. 2010)

COUNSEL FOR APPELLANT:

Karen Shuff Maurer
Assistant Public Advocate
Department Of Public Advocacy


COUNSEL FOR APPELLEE:

Jack Conway
Attorney General of Kentucky

Taylor Allen Payne
Assistant Attorney General
Office of Criminal Appeals
Office of the Attorney General